462 P.2d 729

STATE of Idaho, Plaintiff-Respondent,

v.

Thomas Clark LINN, Defendant-Appellant.

No. 10234.

Supreme Court of Idaho.

Dec. 24, 1969.

Robert F. McLaughlin, Mountain Home, for defendant-appellant.

Robert M. Robson, Atty. Gen., Mack A. Redford, Deputy Atty. Gen., Boise, Fred Kennedy, Pros. Atty. of Elmore County, Mountain Home, for plaintiff-respondent.

DONALDSON, Justice.

Thomas Clark Linn (defendant-appellant) was charged with First Degree Murder of Telesforo Garcia as the result of a shooting which occurred outside the Rendezvous Bar, Mountain Home, Idaho, on June 25, 1967. Garcia's brother had been playing Mexican music on a jukebox at the Rendezvous Bar. Linn turned the volume down and uttered a statement to the effect that he didn't like Mexicans. An argument ensued between Linn and the Garcias and Linn left the bar. Linn attempted to return and Garcia chased Linn out of the bar and around a car, kicking Linn in the seat of his pants with pointed cowboy boots. Linn then drove away from the bar but returned in about 15 minutes. He got out of his car, walked up to the front entrance of the bar and attempted to enter when two beer bottles were flung in his path. Linn then went across the street to his car, got a shotgun from the back seat and again pro-

ceeded across the street to the Rendezvous. Linn did not go back to the front door of the bar but walked to the corner. While Linn was standing on the corner Garcia ran out of the front door of the bar, turned right (in the opposite direction from Linn who was standing on the corner) and then broke a beer bottle which he was carrying. Linn then lost track of Garcia and fired a warning shot in the air. Linn then proceeded to walk west on East Jackson towards the El Rancho Diner and as he approached the side door of the Rendezvous which opens onto East Jackson, one Julian Salinas exited and put his hands up upon seeing Linn holding a gun. Linn continued walking past the side door of the Rendezvous, but then turned around. At this point Linn heard and saw someone coming rapidly at him. It was Telesforo Garcia, the deceased victim, who was carrying what Linn assumed to be a broken beer bottle in his hand. Garcia uttered a word in Spanish and Linn brought his gun around and fired striking Garcia in the head, killing him instantly.

The jury found the appellant, Thomas Clark Linn, guilty of Murder in the Second Degree and he was sentenced to the Idaho State Penitentiary for a term of not to exceed 20 years. Linn has appealed to this Court from the verdict and judgment of conviction of Second Degree Murder.

As his first assignment of error, appellant asserts that he was held without bond from June 25, 1967, until December 4,

1967, the date of trial, and was thereby denied a speedy trial as provided for by the Sixth Amendment of the United States Constitution.

Article I, § 6 of the Idaho Constitution [1] explicitly excludes the right to bail in capital offenses where the proof is evident or the presumption of guilt is great. I.C. § 19–2903 [2] provides essentially the same. Cf., State v. Larsen, 91 Idaho 42, 415 P.2d 685 (1966). In this case the shooting took place in daylight around 8:00 P.M. in the center of Mountain Home before several witnesses. The appellant was arrested shortly after the shooting. It is therefore apparent that the proof was evident and the presumption great of guilt and therefore no error was committed in refusing to set bail.

In regard to the appellant's contention that he was denied the right to a speedy trial, it is evident from the record that appellant was charged and tried within the time limits provided by statute.[3] The first term of the District Court of the Fourth Judicial District commenced January 3, 1967, the second term began May 2, 1967, and the third term began September 5, 1967. The appellant was charged June 25, 1967, and brought to trial December 4, 1967. The date of the charge was within the second term of the court and the date of trial in the next term thus conforming to the requirements as set forth in the Idaho Code. Moreover appellant at no time during his incarceration demanded a speedy

1. Idaho Const. Art. I, § 6.
  "§ 6. *Right to bail—Cruel and unusual punishments prohibited.*—All persons shall be bailable by sufficient sureties, except for capital offenses, where the proof is evident or the presumption great. Excessive bail shall not be required, nor excess fines imposed, nor cruel and unusual punishments inflicted."

2. "19–2903. *Capital offenses not bailable.* —A defendant charged with an offense punishable with death can not be admitted to bail, when the proof of his guilt is evident or the presumption thereof great. The finding of an indictment does not add to the strength of the proof or the presumption to be drawn therefrom."

3. "19–3501. *When action may be dismissed.*—The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
  1. When a person has been held to answer for a public offense, if an indictment is not found against him at the next term of the court at which he is held to answer.
  2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial at the next term of the court in which the indictment is triable, after it is found."

trial and the authorities are in accord that such demand must be voiced by the accused if he is to avail himself of his constitutional right to a speedy trial.[4]

■ Appellant contends that the trial court erred by refusing to admit into evidence certain psychiatrist's clinical records probative of appellant's mental attitude at the time of the crime. These records were results of a sodium amytal (truth serum) test. Thus the issue posed by appellant's assignment of error is whether or not the results of a sodium amytal (popularly known as truth serum) test are admissible in evidence. This question has not heretofore been directly decided in Idaho. The Court in the case of State v. Cypher, 92 Idaho 159, 438 P.2d 904 (1968), was faced with the identical question but stated:

"Without considering specifically the issue of admissibility of a psychiatrist's testimony regarding the results of a 'truth serum' examination, we prefer to apply the general rule that the trial court, in passing upon the qualification of a witness offered as an expert, has wide discretion in determining the admissibility of evidence so offered. An appellate court should not disturb the ruling of the trial court in the absence of a manifest abuse of such discretion. See People v. Carter, 48 Cal.2d 737, 752, 312 P.2d 665, 674 (1957); State v. White, supra [60 Wash.2d 551, 374 P.2d 942]; People v. Jones, supra [42 Cal.2d 219, 266 P.2d 38]." 92 Idaho 159 at 171, 438 P.2d 904 at 916 (1968).

However the Court in State v. Cypher, *supra,* agreed that:

"* * * the weight of authority in our American jurisdictions still regards truth serum tests as inadmissible, inasmuch as they have not as yet attained scientific acceptance as reliable and accurate means

of ascertaining truth or deception. State v. White, 60 Wash.2d 551, 374 P.2d 942 (1962); see Knight v. State, 97 So.2d 115 (Fla.1957); People v. McNichol, 100 Cal.App.2d 554, 224 P.2d 21 (1950); People v. Ford, 304 N.Y. 679, 107 N.E.2d 595 (1952); Lindsey v. United States, 237 F.2d 893, 16 Alaska 268 (9th Cir. 1956); State v. Thomas, 79 Ariz. 158, 285 P.2d 612 (1955), cert. den. 350 U.S. 950, 76 S.Ct. 326, 100 L.Ed. 828; Henderson v. State, 94 Okl.Cr. 45, 230 P.2d 495, 23 A.L.R.2d 1292 (1951), cert. den. 342 U.S. 898, 72 S.Ct. 234, 96 L.Ed. 673; State v. Levitt, 36 N.J. 266, 176 A.2d 465, 91 A.L.R.2d 1112 (1961). See also Annot. 23 A.L.R.2d 1310, sec. 3. Compare People v. Jones, 42 Cal.2d 219, 225, 266 P.2d 38 (1954); People v. Cartier, 51 Cal. 2d 590, 335 P.2d 114 (1959)." 92 Idaho 159 at 171, 438 P.2d 904 at 916 (1968).

We hold that as of today truth serum tests are inadmissible since we still are unconvinced as to the reliability of such evidence. When and if they obtain scientific acceptance as being reliable and accurate, the Court will re-evaluate the admissibility of such evidence.

■ It is also the State's contention that such evidence should not have been admitted, not on the basis of its unreliable character but rather because appellant failed to submit the clinical records in question into evidence. The State urges that because an offer of proof was not made by appellant regarding this evidence that on appeal he is precluded from a review of such evidence. However the purpose of an offer of proof is to enable the Court to rule on the admissibility of proffered evidence. When the Court has indicated that it will not receive evidence on a particular subject, it is unnecessary to make an offer of proof to preserve for review the question as to the propriety of the ruling.[5] State v.

4. Klopfer v. No. Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); State v. Bowers, 261 Iowa —, 162 N.W. 2d 484 (1968).
"Since speedy trial is considered the defendant's personal right, it is deemed

waived if not properly asserted." 57 Colum.L.Rev. 846 at 852 (1957).

5. Bell, Handbook of Evidence for the Idaho Lawyer, p. 17.

Brewer, 73 Idaho 191, 249 P.2d 189 (1952). In the case at bar the record reveals numerous pages of testimony indicating that the trial court knew the evidence sought to be admitted was a videotape interview of the defendant conducted under the influence of the truth serum drug. The judge then indicated that such evidence would not be received. Thus the need for making an offer of proof became obviated.

Appellant asserts as error the fact that the committing magistrate was not fair and impartial since he acted in a dual capacity as both coroner and magistrate. Appellant made a motion to quash the information filed against him on the above ground. The trial judge in his written opinion denying appellant's motion to quash the information stated:

" * * * it is clear that there was ample evidence produced at the preliminary hearing to find that the crime of murder was committed and that there was probable cause to believe that defendant committed the same. The transcript of the preliminary hearing does certainly support such a finding in the absence of any possible personal knowledge by the magistrate.

A preliminary hearing is not in any sense a trial and is at most a preliminary investigation. The Idaho cases so hold. (State vs. Bond, 12 Idaho 424, 83 [86] Pac. 43) I do not find any conflict between the function of the magistrate in this case acting as a coroner and his function as a committing magistrate. A defendant is not put in jeopardy in any way under Idaho procedure by a preliminary examination. Further, the transcript of the preliminary hearing shows that defendant was given every opportunity to establish that the magistrate was prejudiced by any information he might have acquired while acting as coroner, but defendant and his counsel failed to avail themselves of this opportunity. Defendant has failed to show where he has been prejudiced by the acts of the committing magistrate."[6]

As correctly stated by the trial court, a preliminary hearing is in no sense a trial and therefore it does not require the same formality and precision observed at a trial. State v. Bilboa, 33 Idaho 128, 190 P. 248 (1920). The only issues to be determined at a preliminary hearing are whether or not a crime has been committed and if there is reasonable ground to believe that the person accused is guilty of committing the crime. State v. Bilboa, *supra*. However, we do not approve of a magistrate acting in the dual capacity of committing magistrate and coroner. As a coroner there is a possibility that he might acquire personal knowledge of certain information which is not presented at the preliminary hearing and in which case there then might be the question of whether or not he was biased or prejudiced. In this particular case, however, there was ample evidence produced at the preliminary hearing and the appellant was given every opportunity to establish that the magistrate was prejudiced by information acquired as coroner and appellant failed to show where he was prejudiced. We therefore hold that it was harmless error.

Appellant asserts as error that he was denied his constitutional rights since the police and prosecuting attorney continued to interview him subsequent to his demand for counsel while under arrest.

Appellant makes no contention that he was not advised of his right to counsel, or his right to remain silent. Counsel was demanded and was sent for. However it is unclear as to whether or not the police continued to interrogate Linn subsequent to this demand. In any event assuming the police did interrogate Linn after he had demanded counsel, the effect of the interrogation was rendered immaterial since none of the statements elicited thereby were used by the prosecution against Linn at trial.

6. Order Denying Motion to Quash the Information.

There are several fundamental requirements set forth by the United States Supreme Court in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), which must be met before appellant may successfully contest that his Sixth Amendment constitutional right has been violated. In the case at bar, the record does not reveal that the police did not warn appellant of his absolute constitutional right to remain silent, nor does it show that statements elicited by the police during the interrogation were used against Linn at a criminal trial.

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogation that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. [335], at 342 [83 S.Ct. 792 at 795, 9 L.Ed.2d 799], *and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."* (Emphasis supplied) Escobedo v. Illinois, *supra.*

We therefore find that none of the appellant's constitutional rights was violated.

■ Appellant contends that during a police interview conducted while he was under arrest, information was obtained from him which was used to illegally seize personal effects. Nowhere does appellant specify the items claimed by him to have been illegally seized. The Court can only assume that reference is made to the shotgun used by appellant to effect the crime. Upon examination of the record it affirm-atively appears therein that appellant expressly stipulated to the admission of the weapon. If he desired this evidence suppressed he should have done so instead of stipulating to its admission. Appellant will not be heard to complain at this late time. Objections to evidence cannot be raised for the first time on appeal. State v. Conner, 59 Idaho 695, 89 P.2d 197 (1939); State v. Robinson, 71 Idaho 290, 230 P.2d 693 (1951); Darby v. Heagerty, 2 Idaho 282, 13 P. 85 (1887).

Furthermore, assuming arguendo the evidence in question was illegally obtained, its admission into evidence had no bearing on the result of the trial since Linn himself testified that he fired the gun and killed Garcia.

"It is not apparent how appellant could have been prejudiced by the introduction of evidence concerning matters over which there was no dispute, nor has he sought to enlighten the court upon this point, nor endeavored to show wherein or in what manner he was prejudiced thereby, if at all. This court is enjoined by statute to give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties. C.L., § 8070; State v. Gruber, 19 Idaho 692, 115 P. 1; State v. Fondren, 24 Idaho 663, 135 P. 265." State v. Ray, 32 Idaho 363 at 366, 182 P. 857 at 858 (1919); I.C. § 19-2819.

It is for these enumerated reasons that we find no error with respect to the seizure and admission into evidence of the shotgun used to effect the crime.

■ Appellant contends that the preliminary hearing was continued for two days without the consent of the defendant. However the trial court determined that:

"It does not appear nor has defendant made any showing of how this in any way prejudices his rights. I think the record affirmatively shows that defendant and his counsel waived their right to a shorter recess as proposed and taken by their failure to object at the time of the recess.

This objection is clearly an afterthought. Again, there is a total failure to show how defendant was or could have been prejudiced by said delay."[7]

I.C. § 19–804 requires the consent of defendant only where the preliminary hearing is postponed *more* than two days.[8] We therefore agree with the trial court's determination. Absent a showing of prejudice to the appellant, we will not inquire into the preliminary proceedings.

■■■■ Appellant asserts several errors (assignments No. 9, 11, 13, 14, 15, 20) involving the question of the death penalty as presented to the jury on voir dire. Any question involving the death penalty in the case at bar is moot since it was not imposed. However this Court is not unaware of the decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and call to the prosecuting attorney's and district judge's attention that veniremen can no longer be excluded for cause simply because they voice general objections to the death penalty or express conscientious or religious scruples against its infliction. This is so because,

"* * * a State may not entrust the determination of whether a man should live or die to a tribunal organized to return a verdict of death." 391 U.S. 510 at 521, 88 S.Ct. 1770, at 1776, 20 L.Ed.2d 776 (1968).

■■■■ Appellant's assignments of error No. 4 and No. 10 claim that the appellant was denied an impartial jury because of inflammatory articles, radio broadcasts and sermons in the community; that there is no adequate method provided by statute to challenge the jury list upon discovery of such circumstances after the commencement of the trial. Ordinarily if the appellant felt that there was inflammatory and prejudicial matter which made it impossible to obtain a fair jury the proper procedure would be to request a change of venue. However the record shows that appellant Linn himself made an affidavit forbidding a change of venue and evidencing "full confidence in the jurors that will be selected in Elmore County as being impartial."[9] In the event the inflammatory material appeared during the course of trial, the appellant would also have the right of making a motion for mistrial based upon such fact. However in this case the appellant did not make such a motion and this Court cannot now speculate upon the minds of the jury at the time of the trial. The record in this case shows no difficulty in securing a jury and as a whole indicates that appellant had a fair and impartial trial. The Court therefore finds these assignments of error without merit.

■■■■ Appellant assigns as error that a juror remained on the jury who had a monetary interest in prolonging the jury deliberations. Appellant does not argue this point, nor is there any allegation of fact supporting his claim. He did not move for a new trial, nor object to the verdict on this ground and therefore will not be heard to complain for the first time on appeal. Where the record shows no evidence probative of the question presented to the Supreme Court, such question will not be considered. State v. Gould, 55 Idaho 588, 44 P.2d 1114 (1935).

"An exception or assignment of error cannot be accepted as proof of facts therein alleged: * * *." State v. Leavitt, 44 Idaho 739 at 749, 260 P. 164 at 167 (1927).

"Questions or matters not presented in the record will not be considered on appeal. Ramsay v. Hart, 1 Idaho 423; Medbury v. Maloney, 12 Idaho 634, 88 P. 81." Towne v. Northwestern Mut.

---

7. Order Denying Motion to Quash the Indictment.

8. "19–804. *Completion and postponements.* —The examination must be completed at one session unless the magistrate for good cause shown by affidavit, postpone it. The postponement can not be for more than two days at each time, nor more than six days in all, unless by consent or on motion of the defendant."

9. Affidavit, Thomas Clark Linn, Forbidding Change of Venue.

Life Ins. Co. of Milwaukee, Wis., 58 Idaho 83 at 95, 70 P.2d 364 at 369 (1937); Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347 (1951); Neer v. Safeway Stores, Inc., 92 Idaho 361, 442 P.2d 771 (1968).

■ Appellant contends the trial court erred in failing to instruct the jury with respect to the issue of the voluntariness of the act committed. Appellant makes this assertion without the aid of authority or argument. Nonetheless we will answer his contention. The record demonstrates that the trial court incorporated the issue of voluntariness into instruction No. 2.[10] Authority [11] holds that the word "intentional" is synonymous with "voluntary."

"* * * all the matters and things contained in defendant's requested instructions which were not, in fact, given were substantially covered in the instructions which were given by the court to the jury at the close of the case and just prior to arguments of counsel." Archer v. Shields Lumber Co., 91 Idaho 861 at 869, 434 P.2d 79 at 87 (1967).

It is for the reasons enumerated above that we find no error with respect to appellant's assertion.

■ Appellant assigns as error the omission of the trial court to give an instruction regarding his temporary insanity at the time he committed the crime. How-ever an omission to charge on a particular point cannot be assigned as error where no instruction on that point has been requested. State v. Patterson, 60 Idaho 67, 88 P.2d 493 (1939); State v. Roby, 43 Idaho 724, 254 P. 210 (1927); cf., State v. Bitz, 93 Idaho 239, 460 P.2d 374 (1969), concurring opinion. In the case at bar since appellant did not request an instruction on the particular point in question, he is now precluded on appeal from asserting his own failure to act as error.

■ We might emphasize at this point that "temporary insanity" based on "irresistible impulse" or "voluntary intoxication" do not constitute excuses for crime in this state. State v. White, 93 Idaho 153, 456 P.2d 797 (1969); State v. Iverson, 77 Idaho 103, 289 P.2d 603 (1955); State v. Clokey, 83 Idaho 322, 364 P.2d 159 (1961); I.C. § 18–116. Thus it is evident that had appellant in fact requested such instructions at trial they would have been incorrect statements of the law. The trial court did however give a correct instruction with respect to appellant's state of intoxication.[12] State v. Sprouse, 63 Idaho 166, 118 P.2d 378 (1941); State v. Miller, 65 Idaho 756, 154 P.2d 147 (1944).

■ Appellant, in his brief, has asserted no less than 35 assignments of error and 20 points and authorities presumably in support thereof. This Court wishes to call

---

10. Instruction No. 2 given by the trial court.

"In every crime or public offense there must exist a union, or joint operation, of act and intent; or criminal negligence.

The intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. All persons are of sound mind who are neither idiots nor lunatics, nor affected with insanity.

Every person is presumed to intend the natural and probable consequences of his acts."

11. Federal Savings & Ins. Co. v. Rager, 75 Ind.App. 295, 128 N.E. 773 (1920); Miller v. State, 112 Tex.Cr.R. 125, 13 S.W.2d 865 (1929); Webster's Third

New International Dictionary (Unabridged).

12. Instruction No. 18 given by the trial court, based on I.C. § 18–116. "You are instructed that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."

attention to Supreme Court Rule 41, paragraph 2, which specifically refers to the arrangement and contents of the appellate brief.[13] Appellant did not correlate his assignments of error with the points and authorities urged in support thereof. This element of correlation is required in every brief no matter how curt that brief may be. Otherwise the Court must use its time to reconstruct the brief or at least attempt to match up the assignment of error and its corresponding authority. Needless to say the task becomes time consuming and confusing when no less than 35 assignments of error are urged. Furthermore the Court's attention is diluted from the serious issues posed by the case. Inherent in the requirements of Rule 41 is the correlation of the assignment of error and the point of law urged in support thereof. In addition the argument should be used to elaborate and clarify the contentions in support of the assignments of error. There are numerous decisions by this Court which state assignments of error supported neither by argument nor citation of authority will not be considered by the Court. Coffin v. Cox, 78 Idaho 111, 298 P.2d 742 (1956); Maier v. Minidoka County Motor Co., 61 Idaho 642, 105 P.2d 1076 (1940); Louk v. Patten, 58 Idaho 334, 73 P.2d 949 (1937). Nevertheless the Court has attempted to consider and pass upon all assignments of error which cite the transcript or that have authorities cited, or where the Court could correlate the authorities to the assignments. of error.

Judgment affirmed.

McFADDEN, C. J., McQUADE and SPEAR, JJ., and SMITH, District Judge, concur.

---

13. Supreme Court Rule 41, Briefs.
"Rule 41. 1. Preparation.—* * *.
2. Arrangement and Contents.—Statement of the Case. Appellant's brief shall open with a succinct statement of the facts that will fully advise the Court of the nature of the action and the issues raised. Respondent's brief need not contain a statement of facts beyond what may be deemed necessary to correct any inaccuracy or omission in appellant's statement.
Assignments of Error. Appellant's brief shall contain a distinct enumeration of the assignments of error. Assignments of error shall not be redundant.

Points and Authorities. Briefs of both parties shall state the several propositions of law claimed to be involved in the case and the authorities relied upon. * * *
Citations from published reports must be by title of the case as well as by volume and page. Cases from this Court must be cited by reference to the Idaho Reports, if therein contained.
References to the transcript shall be by folio or line and page number.
References to exhibits shall be made by their number and the parties introducing them. (Plaintiff's No. 1, Defendant's A).
Argument. The argument shall be set forth supplementary to the foregoing."