175 P.3d 764

STATE of Idaho, Plaintiff–Respondent,

v.

Alexander Robert JOSLIN, Defendant–Appellant.

No. 32483.

Supreme Court of Idaho, Boise, December 2007 Term.

Dec. 24, 2007.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen, Deputy Attorney General, argued.

Andrew H. Parnes, Ketchum, and Scott E. Axline, Blackfoot, for appellant.

EISMANN, Chief Justice.

This is an appeal from a conviction for statutory rape. The Defendant challenges the district court's denial of the jury's request to define the term "vaginal opening," the sufficiency of the evidence to support the verdict, the court's exclusion of evidence regarding the victim's prior alleged sexual conduct, the court's refusal to permit the Defendant's expert to testify about the effects of alcohol on the memory and motivations to lie, and the court's rejection of the Defendant's arguments that he was denied the equal protection of the law and subjected to cruel and unusual punishment. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

During a party at a friend's house on December 26, 2002, nineteen-year-old Alexander Joslin (Defendant) met and ultimately had sexual intercourse with a sixteen-year-old girl. He was charged with rape committed in one of three ways: by having vaginal intercourse with a female under the age of eighteen, by having vaginal intercourse with a female whose resistance he overcame with force, or by having vaginal intercourse with a female who was unable to resist due to intoxication. The jury found the Defendant guilty of having vaginal intercourse with a female under age eighteen (statutory rape) and not guilty of the other two counts. He appeals, contending that the district court committed various errors during the trial and that the statutes defining the crime and fixing the punishment are unconstitutional.

## II. ISSUES ON APPEAL

1. Did the district court err in failing to define the term "vaginal opening" in response to a request from the jury?

2. Was there sufficient evidence to support the jury's verdict?

3. Did the district court err in excluding evidence of the victim's prior sexual conduct?

4. Did the district court err in excluding testimony of the Defendant's expert witness regarding the effects of alcohol on memory?

5. Did the district court err in excluding testimony of the Defendant's expert witness offered to challenge the constitutionality of Idaho Code § 18–6101(1)?

6. Was the Defendant's trial counsel ineffective when laying the foundation for the testimony of the expert witness?

7. Did the district court err in refusing to permit the Defendant's counsel to use a demonstrative item during his closing argument?

8. Were there cumulative errors during the trial that require reversal of the jury's verdict?

9. Does Idaho Code § 18–6101(1) violate the Equal Protection Clauses of the Constitutions of the United States and Idaho?

10. Does Idaho Code § 18–6101(1) violate the Cruel and Unusual Punishment Clauses of the Constitutions of the United States and Idaho?

11. Does the requirement that the Defendant register as a sex offender consti-

tute the infliction of cruel and unusual punishment?

## III. ANALYSIS

### A. Did the District Court Err in Failing to Define the Term "Vaginal Opening" in Response to a Request from the Jury?

The Defendant was convicted of statutory rape, which Idaho Code § 18–6101(1) defines as "the penetration, however slight, of the . . . vaginal opening with the perpetrator's penis accomplished with a female under any one (1) of the following circumstances: 1. Where the female is under the age of eighteen (18) years." The district court instructed the jury as to the crime of rape in the wording of the statute. After deliberating for about one hour, the jury sent a note to the judge asking the following question: "Does there have to be penetration, ever so slightly, beyond the hymen to constitute penetration? What point of the anatomy (female genitals) does the tip of the penis have to pass (ever so slightly) to constitute penetration? The parts we are concerned with are the labia and the hymen." Over objection from Defendant's counsel, the district court refused to give the jury further clarification as to the meaning of the term "vaginal opening." The court felt that doing so would constitute a comment upon the evidence and rendering a medical opinion. The Defendant contends that the court committed reversible error in failing to further define vaginal opening in response to the jury's question.

"The district court's decision whether or not to give further instructions in response to jurors' questions is discretionary." *State v. Sheahan*, 139 Idaho 267, 282, 77 P.3d 956, 971 (2003). In this case, the State called a physician who had performed a gynecological examination of the victim on the day after the rape. As part of that examination, he had taken photographs of the victim's vaginal area with a colposcope. He testified that the photographs showed injuries to the victim's hymen and to areas outside the vaginal opening which were caused by forced sexual penetration. During his testimony, he identified for the jury various parts of the female anatomy including the vaginal opening, the hymen, and the labia. On cross-examination, the physician opined that no one would want to undergo the trauma necessary to inflict those injuries. In response, the Defendant called a physician who testified that the photographs did not show injury to the victim's hymen and that the other injuries did not show either force or the lack of consent. They could have been caused by vigorous consensual sexual activity or the lack of lubrication. The physician called by the Defendant testified that the labia were external to the vaginal opening, as were the injuries suffered by the victim. The defense physician also testified that the photographs and injuries were not evidence of penetration of the vaginal opening, nor did they rule out such penetration and they were not evidence of force, nor did they show lack of force. There was no conflict between the physicians as to where the vaginal opening was, and the Defendant conceded on appeal that their testimony was accurate in that regard.

In addition, the victim testified that the Defendant had penetrated her vagina with his penis and that she felt it in her vagina. A Blackfoot police officer testified that he questioned the Defendant during the early morning hours of December 27, 2002. The Defendant stated that the victim took a fancy to him, but he told her she was only seventeen [1] and that was a line he was not going to cross. He said that later that night one thing led to another and that he had sexual intercourse with the victim, but did not ejaculate inside her. When the officer asked the Defendant what he meant by sexual intercourse, the Defendant answered that he inserted his penis into the victim's vagina. The police officer's testimony was neither impeached nor challenged, and the Defendant did not testify. The Defendant also gave a written statement in which he stated that after the victim followed him up the stairs, "we proceeded to have intercourse." His semen was also found on her panties and jeans.

---

1. She was forty-one days short of her seventeenth birthday.

In summary, two physicians explained for the jury where the vaginal opening was and where the labia and hymen were in relation to the vaginal opening.[2] The victim testified that the Defendant penetrated her vagina with his penis, and the Defendant admitted to a police officer that he had done so. Under these circumstances, the district court did not abuse its discretion in refusing to instruct the jury further on the definition of vaginal opening.

## B. Was There Sufficient Evidence to Support the Jury's Verdict?

■ The Defendant alleges that there was insufficient evidence to support the jury's verdict. He argues that the evidence did not show that he had penetrated the victim's vaginal opening with his penis.

■ "This Court will not overturn a judgment of conviction, entered upon a jury verdict, where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt." *State v. Sheahan*, 139 Idaho 267, 285, 77 P.3d 956, 974 (2003). The victim's testimony and the Defendant's confession to the police officer provide evidence upon which a reasonable trier of fact could have found that the Defendant penetrated the victim's vaginal opening with his penis. There was sufficient evidence to support the jury's verdict.

## C. Did the District Court Err in Excluding Evidence of the Victim's Prior Sexual Conduct?

■ Pursuant to Rule 412 of the Idaho Rules of Evidence, the Defendant filed a pretrial motion seeking permission to admit evidence that the victim had engaged in consensual sexual intercourse with another male approximately one week before the rape. The Defendant contended that such evidence was admissible under Rule 412(b)(2)(A) upon the issue of whether the Defendant was the source of the injuries identified by the physician who was expected to be called, and was later called, by the State. The district court denied the request. The Defendant argues on appeal that he was prejudiced because the jury was prevented from hearing that the victim's injuries may have been caused by someone other than the Defendant.

The physician called by the State testified that the victim's injuries showed forcible penetration and that a female would not willingly undergo that trauma. If the jury believed that evidence, it would support the allegations that the Defendant committed rape by having vaginal intercourse with a female whose resistance he overcame with force or by having vaginal intercourse with a female who was unable to resist due to intoxication. However, the jury found the Defendant not guilty of those two counts. Therefore, any error in excluding evidence of such sexual conduct would have been harmless as to those counts.

■ As to the statutory rape count, the only asserted relevance of the evidence was to show that the injuries could have been caused by someone other than the Defendant and that they are therefore not circumstantial evidence supporting the victim's testimony that the Defendant had vaginal intercourse with her on December 26, 2002. Again, any error in excluding the evidence was harmless because the Defendant confessed to having had vaginal intercourse with her that night.[3]

## D. Did the District Court Err in Excluding Testimony of the Defendant's Expert Witness Regarding the Effects of Alcohol on Memory?

■ The Defendant sought court approval to retain an Arizona Psychologist at county

2. During oral argument, the Defendant conceded that both physicians were correct in their explanation of where the vaginal opening and labia were.

3. The Defendant also did not offer any evidence at the hearing showing that the victim's injuries observed during her gynecological examination on December 27, 2002, could have been caused by engaging in vaginal intercourse a week earlier. However, the district court did not deny the request on that basis. Later at the trial, the physician who did that gynecological exam testified that in his opinion the injuries were fresh, occurring within the last twelve hours. The physician called by the Defendant testified that she did not have sufficient information to date the injuries. They could have occurred very recently, within a couple days, or up to a week earlier.

expense who would testify regarding reasons why a complainant would make and continue making false allegations and how alcohol intoxication impacts a person's ability to obtain and remember information. The State responded with a motion in limine to prohibit the introduction of such testimony. The district court granted the State's motion on the ground that the proposed testimony would not assist the trier of fact because information that memories may be faulty, that they may be influenced by motive, and that they may be inaccurate due to the ingestion of mind-altering drugs is not beyond the realm of common knowledge in the community.

 "To be admissible, the expert's testimony must assist the trier of fact to understand the evidence or to determine a fact in issue." *Swallow v. Emergency Medicine of Idaho, P.A.*, 138 Idaho 589, 592, 67 P.3d 68, 71 (2003). "An expert's opinion is also inadmissible if it concerns conclusions or opinions that the average juror would be qualified to draw from the facts utilizing the juror's common sense and normal experience." *Athay v. Stacey*, 142 Idaho 360, 367, 128 P.3d 897, 904 (2005). "The admissibility of expert testimony is a matter committed to the discretion of the trial court, and the court's ruling will not be overturned absent an abuse of that discretion." *Id.* at 366, 128 P.3d at 903. The district court did not abuse its discretion in ruling the proffered testimony was inadmissible.

**E. Did the District Court Err in Excluding Testimony of the Defendant's Expert Witness Offered to Challenge the Constitutionality of Idaho Code § 18–6101(1)?**

On November 10, 2004, the Defendant filed a document entitled "Constitutional Challenge to Statutory Rape Law" in which he requested that the district court hold that Idaho Code § 18–6101(1) is unconstitutional on its face and as applied in this case.

In *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), the United States Supreme Court held that California's statutory rape law did not violate the Equal Protection Clause of the Fourteenth Amendment. That statute defined unlawful sexual intercourse as "an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years." A four-justice plurality of the Supreme Court held that the statute "reasonably reflects the fact that the consequences of sexual intercourse and pregnancy fall more heavily on the female than on the male." *Id.* at 476, 101 S.Ct. at 1208, 67 L.Ed.2d at 447. Justice Blackmun concurred in the judgment upholding the constitutionality of the statute on the ground that the statute "is a sufficiently reasoned and constitutional effort to control the problem [of teen pregnancy] at its inception." *Id.* at 482, 101 S.Ct. at 1211, 67 L.Ed.2d at 451–. In *State v. LaMere*, 103 Idaho 839, 843, 655 P.2d 46, 50 (1982), this Court upheld an equal-protection challenge to Idaho Code § 18–6101(1), stating, "[W]e agree that the prevention of illegitimate teenage pregnancies is one of the objectives behind the statute and that the state has a strong interest in furthering this important governmental objective." The Defendant sought to challenge both holdings by showing that there was no proof that the statutory rape law decreased teen pregnancies.

To support that challenge, the Defendant offered materials from the Arizona Psychologist regarding whether statutory rape laws had any impact on reducing teenage pregnancies. In those materials, the Psychologist stated that in his opinion:

1. The statistics from the Idaho Department of Health and Welfare and the Planned Parenthood Association of Idaho, were insufficient from a scientific perspective for the Court to conclude that the Idaho statutory rape law was substantially related to the objective of preventing teenage pregnancy.

. . . .

3. We did not obtain any scientific or population survey data suggesting that the Idaho rape statute had any substantial impact in reducing rates of teenage pregnancy.

On April 18, 2005, the district court held a hearing on the Defendant's constitutional

challenge to the statutory rape law. The Defendant called the Psychologist to testify at the hearing and ultimately asked the Psychologist whether he had an opinion to a reasonable degree of medical certainty as to whether there was any relationship between Idaho's statutory rape law and the prevention of teenage pregnancy. The State objected on the ground of lack of foundation, and the district court sustained the objection. The district court then permitted the Defendant to make an offer of proof by further questioning the Psychologist. During that offer of proof, the Psychologist testified that there is no data he could find to assess whether there was a statistically significant relationship between Idaho's statutory rape law and teenage pregnancies and that he could not find any studies that had been done to assess whether any statutory rape laws impact teen pregnancies.

■ The Defendant contends that the district court erred in failing to admit the evidence for two reasons: after the offer of proof the State did not renew its objection and the district court prevented the Defendant from laying the proper foundation. Neither contention has any merit.

■ The purpose of an offer of proof is to make a record either for appeal or to enable the court to rule on the admissibility of proffered evidence. *State v. Young*, 136 Idaho 113, 29 P.3d 949 (2001); *State v. Linn*, 93 Idaho 430, 462 P.2d 729 (1969). In this case, the district court had already sustained the State's objection to the Psychologist's opinion testimony on foundational grounds. The purpose of the offer of proof was apparently to persuade the court to change its mind because the court took the matter under advisement and later issued an opinion holding the opinion testimony inadmissible for the lack of foundation. Under these circumstances, there was no need for the State to renew its objection. Even so, at the beginning and end of the offer of proof the State made it clear that it was still maintaining its objection to the testimony. Before the offer of proof began, counsel for the State said, "[M]y objections as to foundation will be noted, taken into consideration," to which the court responded, "That's correct." At the conclusion of the State's cross-examination of the Psychologist during the offer of proof, counsel for the State again said, "The State is still maintaining its foundational objection."

■ The record likewise does not support Defendant's contention that the district court prevented the Defendant from laying the proper foundation. At the conclusion of the offer of proof, the district court asked, "Now, anything further to present on this particular issue, Mr. Axline?" Mr. Axline answered, "No, Your honor."

**F. Was the Defendant's Trial Counsel Ineffective When Laying the Foundation for the Testimony of the Expert Witness?**

■ On May 18, 2005, the district court issued an opinion rejecting the Defendant's challenge to the constitutionality of Idaho's statutory rape law. The court concluded that the Defendant had not provided any reliable or valid evidence from which to undermine the conclusions drawn by this Court in *State v. LaMere*, 103 Idaho 839, 843, 655 P.2d 46, 50 (1982). On June 8, 2005, the Defendant filed a motion asking the district court to reconsider that opinion. In that motion, the Defendant also gave notice that his trial counsel was ineffective for failing to lay a proper foundation for the opinion testimony of the Psychologist. The district court ruled that Defendant's counsel had not been ineffective in that regard, and the Defendant challenges that ruling on appeal. He argues, "Either there was proper foundation or counsel was ineffective." The third option is that the expert witness simply lacked sufficient facts upon which to base the opinion, which is what the district court held. In this case, the Psychologist admitted that there were no scientific studies evaluating whether Idaho's or any other state's statutory rape laws had any impact on teenage pregnancies. He therefore could not express an opinion that they did not.

**G. Did the District Court Err in Refusing to Permit the Defendant's Counsel to Use a Demonstrative Aid During His Closing Argument?**

Upon objection from the State, the Defendant was prevented from using a demonstra-

tive aid during closing argument. Neither the item nor a copy of it is part of the record on appeal. It was apparently a document that the Defendant wanted to use to explain his thesis regarding reasonable doubt. The Defendant has not pointed to anything in the record showing that the district court erred in preventing him from using the demonstrative aid during his closing argument. There is also no indication that the Defendant was prevented from arguing the concept of reasonable doubt or from arguing that the State had failed to prove its case beyond a reasonable doubt. In fact, he did so.

## H. Were There Cumulative Errors During the Trial that Require Reversal of the Jury's Verdict?

The Defendant also states, "In the instant matter, the cumulative errors relative to the admission of evidence denied Alex a fair trail [sic] on the matter should be reversed [sic]." Since the Defendant has not shown that the district court made any errors regarding the admission of evidence, the cumulative error doctrine has no application.

## I. Does Idaho Code § 18–6101(1) Violate the Equal Protection Clauses of the Constitutions of the United States and Idaho?

**1. The Constitution of the United States.** The Defendant argues that Idaho Code § 18–6101(1) violates the Equal Protection Clause of the Fourteenth Amendment. In *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981), the United States Supreme Court upheld the constitutionality of California's statutory rape law. The Defendant does not contend that the California statute upheld in the *Michael M.* case differs materially from Idaho's statute with respect to the equal protection argument. Instead, the Defendant contends that if the Supreme Court revisited the issue under the standard used in *United States v. Virginia*, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996),

the Court would overrule its opinion in the *Michael M.* case.

The United States Supreme Court has developed a three-tiered approach to review challenges under the Equal Protection Clause of the Fourteenth Amendment. As the Court stated in *Clark v. Jeter*, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465, 471 (1988) (citations omitted):

> In considering whether state legislation violates the Equal Protection Clause of the Fourteenth Amendment, U.S. Const., Amdt. 14, § 1, we apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. Classifications based on race or national origin and classifications affecting fundamental rights are given the most exacting scrutiny. Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy.

In the *Michael M.* case, the Supreme Court held that California's statutory rape law did not violate the Equal Protection Clause of the Fourteenth Amendment. In doing so, it applied the "intermediate scrutiny" test, although it had not yet attached that name to the test.

Twelve years earlier in *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 407 (1976), the Court stated, "To withstand constitutional challenge, previous cases establish that classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." The four-justice plurality in the *Michael M.* case quoted from *Craig* and then addressed whether the gender classification in California's statutory rape statute served an important governmental objective and was substantially related to the achievement of that objective.[4] Justice

---

4. The Supreme Court in *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397, 406 (1976), first addressed whether the gender classification served an important governmental objec-

tive. The Court concluded it did, stating, "We are satisfied not only that the prevention of illegitimate pregnancy is at least one of the 'purposes' of the statute, but also that the State has a

Blackmun concurred in the judgment, upholding the judgment of the California Supreme Court based upon the test set out in *Craig* and four other cases. The dissenting justices also held that *Craig* set forth the appropriate test to apply.[5] They simply would have applied that test differently. Thus, the test applied in *Michael M.* was the one outlined in *Craig*.

The Defendant contends that certain language in *United States v. Virginia*, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996), changed the intermediate-scrutiny test set out in *Craig*. The Defendant relies upon the following statement: "To summarize the Court's current directions for cases of official classification based on gender: Focusing on the differential treatment or denial of opportunity for which relief is sought, the reviewing court must determine whether the proffered justification is 'exceedingly persuasive.'" 518 U.S. at 532–33, 116 S.Ct. at 2275, 135 L.Ed.2d at 751. According to the Defendant, the "exceedingly persuasive" language mandates a higher level of scrutiny than that used in the *Michael M.* case.

The "exceedingly persuasive justification" language did not originate with *United States v. Virginia*. Almost fourteen years earlier in *Mississippi University for Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090, 1098 (1982) (citations omitted), the Court explained:

> Our decisions also establish that the party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing an "exceedingly persuasive justification" for the classification. The burden is met only by showing at least that the classification serves "important governmental objectives and that the discriminatory means employed" are "substantially related to the achievement of those objectives."

After *United States v. Virginia was decided,* the Court quoted the explanation from *Mississippi University for Women* in *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70, 121 S.Ct. 2053, 2064, 150 L.Ed.2d 115, 132 (2001), and *Heckler v. Mathews*, 465 U.S. 728, 744, 104 S.Ct. 1387, 1397, 79 L.Ed.2d 646, 660 (1984). When the Court's explanation of the phrase "exceedingly persuasive justification" is considered, its mid-level scrutiny utilized in cases analyzing gender classifications under the Equal Protection Clause is the same test announced in *Craig* and the same test applied in *Michael M.* The Defendant has not shown that the United States Supreme Court's opinion in *Michael M.* is no longer authoritative.

■ **2. The Constitution of the State of Idaho.** The Defendant also asks us to strike down Idaho Code § 18–6101 as being in violation of Art. 1, § 2, of the Idaho Constitution.[6] In *State v. LaMere*, 103 Idaho 839, 655 P.2d 46 (1982), we addressed this issue and held that the statute did not violate the equal protection provision in the Idaho Constitution. The Defendant asks us to reconsider the arguments made by the defendant in *LaMere* and overrule that opinion.

strong interest in preventing such pregnancy." 450 U.S. at 470, 101 S.Ct. at 1205, 67 L.Ed.2d at 443. It also concluded that the gender classification making only males criminally liable when they engaged in sexual intercourse with minor females was substantially related to the achievement of that objective. "The question thus boils down to whether a State may attack the problem of sexual intercourse and teenage pregnancy directly by prohibiting a male from having sexual intercourse with a minor female. We hold that such a statute is sufficiently related to the State's objectives to pass constitutional muster." 450 U.S. at 472, 101 S.Ct. at 1206, 67 L.Ed.2d at 444-45; footnote omitted.

**5.** Justices Brennan, White, and Marshall in their dissenting opinion identified the issue as: "Whether the admittedly gender-based classification in Cal.Penal Code Ann. § 261.5 (West.Supp.

1981) bears a sufficient relationship to the State's asserted goal of preventing teenage pregnancies to survive the 'mid-level' constitutional scrutiny mandated by *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976)." 450 U.S. at 488, 101 S.Ct. at 1213-14, 67 L.Ed.2d at 454. In his dissenting opinion, Justice Stevens stated, "Nevertheless, as I have previously suggested, the ultimate standard in these, as in all other equal protection cases, is essentially the same. See *Craig v. Boren*, 429 U.S. 190, 211–212, 97 S.Ct. 451, 464–465, 50 L.Ed.2d 397 (STEVENS, J., concurring)." 450 U.S. at 497, 101 S.Ct. at 1218, 67 L.Ed.2d at 459.

**6.** The relevant portion of that Section provides: "All political power is inherent in the people. Government is instituted for their equal protection and benefit...."

We see no need to revisit the arguments we rejected in *LaMere*.

The Defendant contends that since *LaMere* the State has increased its efforts to obtain child support from the fathers of children born out of wedlock. He argues that as a result there are long-lasting consequences for males who impregnate minor females. That some males may bear increased civil consequences for impregnating a minor female does not lessen the State's interest in attempting to prevent such pregnancies in the first place.

The Defendant also contends that there have been societal changes since *LaMere* that undermine any assumption that males are always the aggressors when minor females engage in sexual intercourse. In his dissent in *Michael M.*, Justice Stevens argued that if the law punished only one of the two participants, the State should be required to prove that the participant punished was the aggressor. None of the other justices joined in his dissent. As this Court stated in *LaMere*, "Because males alone can 'physiologically cause the result which the law properly seeks to avoid,' *Michael M.*, [450 U.S. at 467,] 101 S.Ct. at 1202, [67 L.Ed.2d at 441] a law punishing a male for sexual intercourse with a teenager under the age of eighteen could certainly help deter this conduct." 103 Idaho at 843, 655 P.2d at 50.

Finally, the Defendant argues that when the rape statute was adopted by the territorial legislature, the age of consent was ten. Since that age limit was well below the average age of menstruation at the time, the statute could not have been intended to prevent teenage pregnancies. In 1895 the state legislature raised the age of consent to eighteen, 1895 Idaho Sess. Laws 19–20, which was above the average age of menstruation. Except for the three-month period in 1971 during which a version of the Model Penal Code was in effect in Idaho, *State v. Stiffler*, 117 Idaho 405, 788 P.2d 220 (1990), the legislature has maintained eighteen as the age of consent.

We decline the Defendant's invitation to overrule *State v. LaMere*. We continue to hold that Idaho Code § 18–6101 does not violate Art. 1, § 2, of the Idaho Constitution.

**J. Does Idaho Code § 18–6101(1) Violate the Cruel and Unusual Punishment Clauses of the Constitutions of the United States and Idaho?**

The Defendant contends that Idaho Code § 18–6101(1) constitutes cruel and unusual punishment under the Constitutions of the United States and Idaho because it authorizes a sentence of up to life in prison for statutory rape. Actually, it is Idaho Code § 18–6104 which establishes the possible sentence for rape. It provides, "Rape is punishable by imprisonment in the state prison not less than one (1) year, and the imprisonment may be extended to life in the discretion of the District Judge, who shall pass sentence."

The Defendant did not receive a life sentence, and he does not challenge the sentence that he did receive. Rather, he contends that the statute is unconstitutional because on its face it would permit a sentence of up to life in prison for statutory rape.

The Eighth Amendment to the Constitution of the United States provides, "Excessive bail shall not be required, or excessive fines imposed, nor cruel and unusual punishments inflicted." That identical wording is contained in Art. 1, § 6, of the Idaho Constitution. Both Constitutional provisions prohibit the *infliction* of cruel and unusual punishments, not the mere possibility that those punishments could be imposed. Since the Defendant was not sentenced to life in prison, we need not address whether it would constitute cruel and unusual punishment for that sentence to have been inflicted.

**K. Does the Requirement that the Defendant Register as a Sex Offender Constitute the Infliction of Cruel and Unusual Punishment?**

In 1998, the Idaho legislature enacted the Sexual Offender Registration Notification and Community Right–to–Know Act, I.C. §§ 18–8301 *et seq.* The Act requires that an "offender" convicted of a specified offense must register with the sheriff of the offender's county of residence. I.C. § 18–8307. The offender must initially register

within a specified time of coming into the county to establish residence or temporary domicile and then register annually thereafter. *Id.* The offenses for which registration is required include statutory rape,[7] I.C. § 18-8304(1), and the district court ordered the Defendant in this case to register as a sex offender. The registration requirement extends for life, unless the offender successfully petitions the court under Idaho Code § 18-8310 to be relieved of the requirement. Such request can be made ten years after the offender is released from incarceration or placed on parole, supervised release, or probation, whichever is longer. *Id.*

 The Defendant contends that the registration requirement constitutes cruel and unusual punishment in violation of the Constitutions of the State of Idaho and the United States. The requirement that sexual offenders register does not impose punishment. "The purpose of Idaho's registration statute is not punitive, but remedial." *Ray v. State,* 133 Idaho 96, 100, 982 P.2d 931, 935 (1999). It "provides an essential regulatory purpose that assists law enforcement and parents in protecting children and communities." *Id.* at 101, 982 P.2d at 936. Therefore, it cannot constitute the infliction of cruel and unusual punishment under our State Constitution. Since it is not punishment under Idaho law, it would not constitute the infliction of punishment under the Constitution of the United States. *See, Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).

## IV. CONCLUSION

We affirm the judgment of the district court.

Justices BURDICK, W. JONES and HORTON concur.

7. Exemption from the registration requirement can be granted to a defendant convicted of statutory rape under specific circumstances. Idaho Code § 18-8304(4) provides:

(4) When a defendant is convicted of rape under section 18-6101I., Idaho Code, and at the time of the offense the defendant is nineteen (19) or twenty (20) years of age and not more than three (3) years older than the victim of the rape, the court may order that the defendant is exempt from the requirements of this chapter upon a finding by the court that:

(a) All parties have stipulated to the exemption; or

(b) The defendant has demonstrated by clear and convincing evidence that he is not a risk to commit another crime identified in subsection (1) of this section and in the case there were no allegations by the victim of any violation of section 18-6101I. through 7., Idaho Code.

---

J. JONES, Justice, specially concurring.

The Court has correctly analyzed the issues raised by the Defendant. Under existing law, the Defendant committed the offense of statutory rape and was properly convicted thereof by an apparently reluctant jury. I say the jury was apparently reluctant because, following the verdict and prior to sentencing, nine of the jurors wrote to the sentencing judge to express sympathy for the Defendant and to request leniency in his sentence. The text of one of those letters, signed by seven jurors, states:

Dear Judge Herndon:

We the undersigned jury members in the Alexander Joslin case, would like to make you aware of our concern in this particular matter.

Alex is scheduled to be sentenced August 15th @ 2:00pm in your courtroom and we are extremely concerned about the punishment that he may receive.

It is our understanding that Alex will be labeled as a sex offender and this label will be placed on his record and will follow him for the rest of his life. We do not believe that Alex is a sex offender or that he should be labeled as such. He was a teenager who was enticed into making a mistake by a young lady who should share equally in the consequences. We feel that he should not be punished for the rest of his life, while . . . , the girl involved goes free.

We are now aware of how the law reads, how it defines statutory rape and the possible punishments that could be invoked. We feel that the law is antiquated and the

letter of the law should not be applied in this case.

We realize that it is your duty and responsibility to set punishment and not ours, but we would appreciate your consideration of our opinion in this matter.

Sincerely, (signatures of seven jury members)

It seems fairly obvious that the jury found substantial evidence upon which to base the conviction, as it appears the jury did have qualms about fulfilling its responsibility.