[Cite as *State v. Bradley*, 2011-Ohio-6266.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100833 |
| | | TRIAL NO. B-1004093 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| LEON BRADLEY, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 9, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Joshua L. Goode*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

Per Curiam.

{¶1}     Defendant-appellant Leon Bradley appeals his bench-trial conviction for unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A).  The trial court sentenced Bradley to one year in prison and labeled him a Tier II sex offender under Am.Sub.S.B. No. 10 ("Senate Bill 10"), which the General Assembly enacted in 2007 to implement the federal Adam Walsh Child Protection and Safety Act of 2006.  As a Tier II sex offender, Bradley is required to register for 25 years and to verify his information every 180 days.

{¶2}     The record shows that Bradley met his victim over the internet when he was 30 and she was 14 years old.  The victim testified that Bradley knew how old she was and that she was a freshman in high school.  They communicated over the internet, by texting, and "once in a while" by telephone.  According to the victim, they talked about sex and "told each other that [they] loved each other."  They exchanged photographs.  Bradley sent the victim a photograph of his penis, and she sent him photographs of herself in her "bra and panties" and a nude photograph in which she was "covering up [her] chest."

{¶3}     On June 21, 2010, Bradley arranged to meet the victim at the Sharonville Recreation Center.  The victim testified that she got into Bradley's car and "gave him a hug."  After a short time, the victim directed Bradley to a park on Kemper Road.  They listened to music for about 20 minutes and then "started kissing."  Bradley pulled his pants down and then pulled the victim's pants "down a little past [her] knees."  Bradley put his finger into the victim's vagina, and she rubbed his penis.  After this activity had been going on for about ten minutes, Bradley climbed over the console, got on top of the victim, and tried to have sexual

intercourse with her. The victim testified that when Bradley tried to put his penis into her vagina, she said, "No." Bradley at first said, "Don't be like that." But he then said, "You're right, no means no," and backed off of the victim.

{¶4} Bradley and the victim left the park and drove toward Reed Hartman Highway. Police stopped the car because it was owned by someone with a suspended driver's license. Bradley told the victim to lie to police and tell them that they had been at Sports Plus, that he had just dropped off his niece at her home, and that he was now taking the victim home. The victim gave police a false name and date of birth. Eventually, the victim admitted her true name and date of birth, and told police what had happened.

{¶5} Bradley testified at trial that he thought the victim was 17 when he first contacted her on the internet. He denied sending the victim a photograph of his penis. He admitted that he had kissed the victim on the forehead, but he denied that any sexual activity had occurred between them. He stated that the relationship was platonic and that he had told the victim that he loved her "as a friend." Bradley also acknowledged that he did not want his family and friends to know that he had been communicating over the internet with a teenager.

{¶6} Bradley's first assignment of error alleges that his classification as a Tier II sex offender is unconstitutional because Senate Bill 10's residency restriction violates his right to due process. Bradley has no standing to challenge Senate Bill 10's residency restriction because he has not shown that he lives in or owns property within the restricted area or that he has been forced to move outside the restricted area. See *State v. Randlett*, 4th Dist. No. 08CA3046, 2009-Ohio-112, reversed in part on other grounds, *In re Sexual Offender Classification Cases*, 126 Ohio St.3d 322, 2010-Ohio-3753, 933 N.E.2d 801; *State v. Swank*, 11th Dist. No. 2008-L-019,

2008-Ohio 6059, reversed on other grounds, *Cases Held for the Decision in State v. Williams*, ___ Ohio St.3d ___, 2011-Ohio-5348, ___ N.E.2d ___; *State v. Duncan*, 3rd Dist. No. 7-08-03, 2008-Ohio-5830. The first assignment of error is overruled.

{¶7}	Bradley's second assignment of error alleges that the trial court erred in classifying him as a Tier II sex offender because Senate Bill 10's registration requirements constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution.

{¶8}	In *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, the Ohio Supreme Court held that Senate Bill 10's classification, registration, and community-notification provisions are punitive. As a Tier II sex offender, Bradley is required to register as a sex offender for 25 years and to verify his information every 180 days. He is not subject to community notification. Bradley argues that Senate Bill 10's registration provisions impose a punishment that is excessive for the crime of unlawful sexual conduct with a minor.

{¶9}	The Ohio Supreme Court has stated that "[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person," and that "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶14, citing *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 371, 1999-Ohio-113, 715 N.E.2d 167, and quoting *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 70, 203 N.E.2d 334. In *Weitbrecht*, the Ohio Supreme Court adopted a three-part test to determine whether the penalty imposed is disproportionate to the crime committed: (1) the court looks to the "gravity of the

offense and harshness of the penalty;" (2) the court may compare the sentences imposed on other defendants in the same jurisdiction; and (3) the court may compare the sentences imposed for the same crime in other jurisdictions. *State v. Weitbrecht*, supra, at 371, quoting *Solem v. Helm* (1983), 463 U.S. 277, 290-291, 103 S.Ct. 3001. A reviewing court need not reach the second and third parts of the test "except in the rare case when a threshold comparison of the crime committed and the sentence imposed lead to an inference that the two are grossly disproportionate." Id. at 371, citing *Harmelin v. Michigan* (1991), 501 U.S. 957, 111 S.Ct. 2680 (Kennedy, J., concurring); *State v. Lawson*, 6th Dist. No. L-09-1296, 2010-Ohio-4270, ¶37; *State v. Keller* (June 1, 2001), 2nd Dist. No. 18411. A sentence that "is not otherwise cruel and unusual does not become so simply because it is 'mandatory.' " *Harmelin v. Michigan*, supra, citing *Chaman v. United States* (1991), 500 U.S. 453, 111 S.Ct. 1919.

{¶10} In determining whether a punishment is "cruel and unusual," reviewing courts must give substantial deference to the "broad authority" that the legislature has to determine the "types and limits of punishments for crimes." *State v. Weitbrecht*, supra, at 373. Generally, punishments that fall within the terms of a valid statute are not cruel and unusual. *McDougle v. Maxwell*, supra. The question is whether, after deferring to the legislature's authority to define offenses and set the punishment for them, and after giving the legislature's determination the presumption of constitutionality to which it is entitled, the reviewing court can say that the penalty that the legislature has deemed appropriate is so disproportionate to the crime as to shock any reasonable person and the community's sense of justice. *State v. Hairston*, supra; *State v. Keller*, supra.

{¶11}   Bradley was convicted of unlawful sexual conduct with a minor.  His victim was 14 years old when he began to groom her for the eventual encounter.  He kept his communications with the victim secret because he did not want his family and friends to find out about his "friendship" with the teenager.  He then proceeded to act even though he knew it was wrong to have any type of sexual relationship with his young victim.

{¶12}   The legislature has determined that the way to protect the public from sexual offenders such as Bradley is to classify them as Tier II offenders and require them to register for 25 years and to verify their information every 180 days.  See R.C. 2950.02.  The registration requirements may well deter Bradley from future sexual crimes.

{¶13}   We cannot say that the requirement that Bradley register as a sexual offender for 25 years and verify his information every 180 days constitutes one of those rare cases where the punishment is so extreme as to be grossly disproportionate to the crime or that it is shocking to a reasonable person and to the community's sense of justice.  See *State v. Hairston*, supra.  The second assignment of error is overruled.

{¶14}   Bradley's third and fourth assignments of error allege that his conviction was based upon insufficient evidence and against the manifest weight of the evidence.  Bradley essentially argues under both assignments of error that the victim's testimony was not credible.

{¶15}   The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.  See *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.  The trial court believed the victim's testimony, as it was entitled to do.  After viewing the evidence presented at trial, in the light most

favorable to the prosecution, we conclude that a rational trier of fact could have found that all the essential elements of unlawful sexual conduct with a minor had been proven beyond a reasonable doubt. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Further, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot conclude that, in resolving the conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that Bradley's conviction must be reversed and a new trial ordered. See *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The third and fourth assignments of error are overruled.

{¶16} The judgment of the trial court is affirmed.

Judgment affirmed.

**HENDON, P.J., CUNNINGHAM** and **FISCHER, JJ.**

Please Note:
    The court has recorded its own entry this date.

7