[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Blankenship,* Slip Opinion No. 2015-Ohio-4624.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-4624

THE STATE OF OHIO, APPELLEE, *v.* BLANKENSHIP, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Blankenship,* Slip Opinion No. 2015-Ohio-4624.]

*Criminal law—Sex offenders—R.C. Chapter 2950—Registration and address-verification requirements for Tier II sex offenders do not constitute cruel and unusual punishment in violation of either Eighth Amendment to U.S. Constitution or Article I, Section 9 of Ohio Constitution.*

(No. 2014-0363—Submitted March 10, 2015—Decided November 12, 2015.)

APPEAL from the Court of Appeals for Clark County, No. 2012-CA-74, 2014-Ohio-232.

_____

LANZINGER, J.

{¶ 1} Appellant, Travis Blankenship, challenges as cruel and unusual punishment the sex-offender-registration and address-verification requirements imposed upon him as part of his sentence for violating R.C. 2907.04 by engaging in unlawful sexual conduct with M.H., a 15-year-old, when he was 21.  Because

we hold that the Tier II registration requirements imposed upon him are not so extreme as to be grossly disproportionate to the crime or shocking to a reasonable person and to the community's sense of justice, we affirm the judgment of the court of appeals.

## I. Background

{¶ 2} In 2011, Blankenship began communicating with M.H. through a social media site called PhoneZoo.com. During an online conversation he told M.H. that he was 21, and she informed him that she was 15. After meeting in person, they began a sexual relationship and had intercourse on two different dates. M.H. reported that it was consensual each time.

{¶ 3} A bill of information charged Blankenship with one count of unlawful sexual conduct with a minor who was over 13 but less than 16 years of age, a violation of R.C. 2907.04, a fourth-degree felony. Blankenship pled guilty and was evaluated by a psychologist as part of the presentence investigation ordered by the court. The psychologist characterized Blankenship as showing none of the characteristics of what he considers a sex offender despite his commission of a sex offense and concluded that Blankenship's risk of reoffending was low. Yet while the presentence investigation was pending, Blankenship contacted the victim and lied to the psychologist about it. As a result, the court postponed sentencing and ordered a reevaluation. After the new evaluation, the psychologist's opinion and recommendations remained the same.

{¶ 4} The trial court then sentenced Blankenship to five years of community control with conditions, including a six-month jail sentence, which was suspended after Blankenship served 12 days. Blankenship was also designated a Tier II sex offender/child-victim offender, R.C. 2950.01(F)(1)(b), and pursuant to R.C. 2950.04(A)(2) was required to register in person with the sheriff of the county where he establishes residency within three days of coming into that county, as well as with the sheriff of the county in which he

2

attends school or in which he is employed immediately upon coming into that county. He is also required to verify his residence address, place of employment, and place of education in person every 180 days for 25 years. R.C. 2950.06(B)(2) and 2950.07(B)(2).

{¶ 5} On appeal, Blankenship argued that these Tier II sex–offender requirements imposed upon him violated the prohibition of the Eighth Amendment to the United States Constitution against cruel and unusual punishment. Blankenship stressed the psychologist's opinion to support the contention that he was not a sex offender. He argued that his relationship with M.H. was "caring" and that the circumstances showed no aggravating facts. He contended that a 25-year registration period would serve no legitimate penological purpose in his case.

{¶ 6} The Second District, in a two-to-one decision, affirmed the judgment of the trial court and concluded that Blankenship's sentence did not violate the Eighth Amendment.

{¶ 7} Blankenship appealed to this court, and we accepted jurisdiction on his sole proposition of law: "Mandatory sex offender classifications under Senate Bill 10 constitute cruel and unusual punishment where the classification is grossly disproportionate to the nature of the offense and character of the offender." 139 Ohio St.3d 1404, 2014-Ohio-2245, 9 N.E.3d 1062.

{¶ 8} Although the proposition of law refers only to the mandatory sex-offender classification, Blankenship's brief also contains numerous references to the registration requirements. Indeed, it would be difficult to discuss the impact of being classified as a sex offender without referring to those mandatory requirements. We therefore will address both classification and registration in our discussion.

## II. Analysis

**{¶ 9}** We have already set forth the history of Ohio's sex-registration legislation in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424. 933 N.E.2d 753, ¶ 3-28. While classification and registration schemes vary across states, most states addressing Eighth Amendment challenges to mandatory sex-offender classification for adults have dismissed those challenges based on their findings that the registration schemes are remedial rather than punitive.[1] We, however, have held that the enhanced sex-offender reporting and notification requirements contained in R.C. Chapter 2950 enacted by Am.Sub.S.B. No. 10 ("S.B. 10") are punitive in nature: "Following the enactment of S.B. 10, all doubt has been removed: R.C. Chapter 2950 is punitive." *State v. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16. In addition, we also have held as unconstitutional the prospective, automatic application of those reporting and notification requirements to certain juvenile offenders. *In re C.P.,* 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729.

**{¶ 10}** Blankenship, although not a juvenile, claims that his classification and requirement to register as a sex offender violate the Eighth Amendment's prohibition against cruel and unusual punishment. He relies heavily on his psychologist's opinion that he is not a sex offender. But this reliance is misplaced because the state statutory scheme provides for automatic consequences.

---

[1] For cases holding that registration schemes are remedial rather than punitive, *see, e.g., Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367 (1995); *State v. Joslin,* 145 Idaho 75, 175 P.3d 764 (2007); *Meinders v. Weber*, 2000 SD 2, 604 N.W.2d 248.

For cases resting on findings that registration requirements do not constitute punishment, *see, e.g., Wiggins v. State*, 288 Ga. 169, 702 S.E.2d 865 (2010); *People v. Adams,* 144 Ill.2d 381, 581 N.E.2d 637 (1991); *State v. Lammie*, 164 Ariz. 377, 793 P.2d 134 (App.1990); *Patterson v. State*, 985 P.2d 1007 (Alaska App.1999).; *In re Alva*, 33 Cal.4th 254, 14 Cal.Rptr.3d 811, 92 P.3d 311 (2004).

For a case finding that the registration requirements are punishment but do not constitute cruel and unusual punishment, *see State v. Mossman,* 294 Kan. 901, 281 P.3d 153 (2012).

**{¶ 11}** Ohio's current sex-registration statutes create a three-tier classification system. Unlike the earlier "labeling" classification system under Megan's Law, 146 Ohio Laws, Part II, 2560, in which a judge could consider the characteristics of an offender before sentencing, "tier" classification is based solely upon the offense for which a person is convicted and the judge has no discretion to modify the classification. *Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 20.

**{¶ 12}** Blankenship pled guilty to a violation of R.C. 2907.04, unlawful sexual conduct with a minor. Generally, a violation of R.C. 2907.04 is a fourth-degree felony and prohibits sexual conduct between a person 18 or older and someone 13, 14, or 15 years old. R.C. 2907.04(A) and (B)(1). The offense is a third-degree felony if the age span is ten or more years, R.C. 2907.04(B)(3), and becomes a second-degree felony if the offender has certain prior offenses, R.C. 2907.04(B)(4). The offense is reduced to a misdemeanor of the first degree if the age span is less than four years. R.C. 2907.04(B)(2).

**{¶ 13}** For purposes of R.C. Chapter 2950, certain violations of R.C. 2907.04 qualify as "sexually oriented offenses." R.C. 2950.01(A)(2) and (3). A "sex offender" is a person who is convicted of "any sexually oriented offense." R.C. 2950.01(B)(1).

**{¶ 14}** A person convicted of violating R.C. 2907.04 is a Tier I sex offender if the offender was less than four years older than the victim, there was no consent, and the offender has not been convicted of or pled guilty to certain sex offenses. R.C. 2950.01(E)(1)(b). But if the offender is at least four years older than the victim, or if the offender is less than four years older but has been convicted of or pled guilty to certain sex offenses, the classification is raised to that of Tier II sex offender. R.C. 2950.01(F)(1)(b).

**{¶ 15}** Blankenship was convicted of the fourth-degree felony version of R.C. 2907.04 in this case because he was six years older than M.H., the person

with whom he engaged in sexual conduct, and he did not have prior offenses. His Tier II classification requires him to register and verify his address semiannually for 25 years as specified by R.C. 2950.06(B)(2) and 2950.07(B)(2).

{¶ 16} Blankenship bases his claim of cruel and unusual punishment on both the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution. We will therefore examine his claim under both federal and state law.

A. Federal Law

{¶ 17} The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The Amendment proscribes 'all excessive punishments, as well as cruel and unusual punishments that may or may not be excessive.' " *Kennedy v. Louisiana,* 554 U.S. 407, 419, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), quoting *Atkins v. Virginia,* 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), fn. 7. It is elementary that the Eighth Amendment prohibits torture. *Wilkerson v. Utah,* 99 U.S. 130, 136, 25 L.Ed. 345 (1878). But the bulk of Eighth Amendment jurisprudence concerns not whether a particular punishment constitutes torture, but whether it is disproportionate to the crime. The central precept is that "punishment for crime should be graduated and proportioned to [the] offense." *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

{¶ 18} The United States Supreme Court has observed that its cases addressing proportionality fall into two categories. The first involves "challenges to the length of term-of-years sentences given all the circumstances in a particular case." *Graham v. Florida,* 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). The second involves categorical restrictions that, until *Graham,* applied only in capital cases. The second approach traditionally involves "cases in which the Court implements the proportionality standard by certain categorical

6

restrictions on the death penalty." *Id.* These restrictions include a prohibition on the death penalty for nonhomicide crimes, for defendants who committed the crime before the age of 18, and for defendants with low mental functioning. *See Kennedy v. Louisiana,* 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (prohibiting death as a punishment for nonhomicide crimes); *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (prohibiting the death penalty for defendants who committed crimes before turning 18); *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (prohibiting death for persons with low intellectual functioning).

{¶ 19} In *Graham v. Florida,* the court applied the categorical approach, as in *Roper, Kennedy,* and *Atkins,* and concluded that the Eighth Amendment prohibits the imposition of life without parole on a juvenile who did not commit homicide. But Blankenship does not fit into this categorical restriction—he was not a juvenile when he committed his sex offense. He does not identify, either in briefing or at oral argument, any other group into which he fits where a categorical rule has been established making requirements such as Tier II registration cruel and unusual. At best, Blankenship suggests that we adopt a categorical prohibition of Tier II registration for young adult offenders who are shown to present a low risk of recidivism, who have a consensual relationship with the victim, and whose psychological profile shows none of the features typical of sex offenders. For an Eighth Amendment analysis, we must determine whether a new categorical rule is constitutionally mandated.

{¶ 20} When considering Eighth Amendment challenges and whether to adopt a categorical rule, the U.S. Supreme Court engages in a two-step process:

> The Court first considers "objective indicia of society's standards, as expressed in legislative enactments and state practice" to determine whether there is a national consensus against the

sentencing practice at issue. *Roper, supra,* at 572 * * *. Next, guided by "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose," *Kennedy,* 554 U.S., at 421 * * *, the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. *Roper, supra,* at 572 * * *.

*Graham*, 560 U.S. at 61, 130 S.Ct. 2011, 176 L.Ed.2d 825.

{¶ 21} In analyzing Blankenship's challenge to the registration requirements imposed on him, we must bear in mind the overriding principle that "[t]he concept of proportionality is central to the Eighth Amendment." *Id.* at 59. Thus, the goal of the two-step process described above is to determine whether Blankenship's punishment is proportionate to his crimes.

{¶ 22} Because Blankenship concedes the lack of a national consensus against lengthy sex-offender registration for individuals like himself, we need not discuss the first step. With regard to the second step, a review undertaken in our own independent judgment, there are three considerations: (1) the culpability of the offender in light of his crime and characteristics, (2) the severity of the punishment in question, (3) and the penological justification. *Graham* at 67. We now consider these three areas.

*Culpability of the Offender*

{¶ 23} The first consideration in the independent review is assessing the culpability of the offender. As a matter of law, Blankenship's conviction for a sexually oriented offense makes him a sex offender. R.C. 2950.01(B)(1). Blankenship urges us to consider the analysis in *In re C.P.* regarding juveniles as equally applicable to young adult offenders like himself who do not have a criminal history and who pose no real threat to the community. But in *C.P.,* we

emphasized that Ohio's system for juveniles assumes that "children are not as culpable for their acts as adults." 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 39. We are not persuaded that this longstanding distinction between the culpability of juveniles and adults, even young adults, should be set aside in this case. Blankenship is an adult and thus *In re C.P.* does not apply to him.

**{¶ 24}** Blankenship was himself 21 when the relationship began, and he knew that M.H. was only 15; she told him so over the Internet. Despite his awareness of her minority, he had intercourse with her twice. He also contacted her while his case was pending in direct violation of the court's presentence order. These facts show Blankenship's culpability in engaging in sexual conduct when the offender "knows the other person is thirteen years of age or older but less than sixteen years of age." R.C. 2907.04(A). It is true that if M.H. had been only one year older, she would have been at the age of consent and there would have been no crime. But the legislature has chosen to draw the line at a difference of four years between the offender and the victim. Blankenship was six years older than M.H. and is therefore deemed more culpable and more deserving of punishment.

*Severity of the Punishment*

{¶ 25} The second consideration is the severity of the punishment. Blankenship, an adult, had a sexual relationship with a 15-year-old, fully aware of her age. He could have received 18 months in prison as a maximum sentence. R.C. 2929.14(A)(4) (fourth-degree felony). Instead, he was placed on community control and served 12 days of a six-month sentence. If M.H. had been three years younger, Blankenship would have faced an indefinite prison term of a minimum of ten years to a maximum term of life. R.C. 2907.02(B); 2971.03(B)(1)(a). These legislative gradations according to the victim's age reflect society's judgment that the culpability of the offender increases as the age of the victim decreases. There is no support in the law for Blankenship's contention that the maturity level of a "young adult" of 21 is similar to that of a juvenile and that his culpability should be reduced accordingly.

{¶ 26} In addition, we cannot say that the state has no interest in protecting minors who may otherwise "consent" to sexual activity. Consent plays no role and is not a viable defense in determining whether a person has violated R.C. 2907.04. A child under 16 is simply not legally capable of consent to sexual conduct with an adult.

{¶ 27} Tier II registration requirements associated with a conviction for unlawful sexual conduct with a minor are not so severe as to amount to cruel and unusual punishment under the federal Constitution. Blankenship's obligation to register in person in any county where he establishes residency, goes to school, or takes a job and to verify his residence address, place of employment, and place of education in person every 180 days for 25 years is burdensome but does not reach that constitutional level. Our research reveals no case in which similar registration and verification requirements have been held to be cruel and unusual punishment. Blankenship has not persuaded us to extend the law in the manner he suggests.

10

*Penological justifications*

{¶ 28} The final consideration in an Eighth Amendment analysis is to assess the penological justifications for the sentencing practice. *Graham,* 560 U.S. at 67, 130 S.Ct. 2011, 176 L.Ed.2d 825. The stated purpose of S.B. 10 and its registration and community-notification requirements is "to protect the safety and general welfare of the people of this state." R.C. 2950.02(B).

{¶ 29} We acknowledge that sex-offender registration schemes have been criticized on the ground that they do not actually serve the intended purpose of community protection. *See, e.g.,* McLeod, *Regulating Sexual Harm: Strangers, Intimates, and Social Institutional Reform*, 102 Calif.L.Rev. 1553, 1573-1580 (2014); Rodriguez, *The Sex Offender Under the Bridge: Has Megan's Law Run Amok?*, 62 Rutgers L.Rev. 1023, 1052-1056 (2010); Yung, *The Emerging Criminal War on Sex Offenders,* 45 Harv.C.R.-C.L.L.Rev. 435, 453-459 (2010).

{¶ 30} Yet we also note that while registration provisions such as the one at issue have been criticized by some as unjustified, the penological grounds for imposing such requirements are still accepted in many quarters and are justified in part based upon the perceived high rate of recidivism and resistance to treatment among sex offenders. Proponents consider registration to be a more economical method of monitoring and preventing recidivism than the costly alternative of imprisonment. Wilkes, *Sex Offender Registration and Community Notification Laws: Will These Laws Survive?,* 37 U.Rich.L.Rev. 1245, 1251-1252 (2003). We cannot say that the requirements of semiannual address registration and verification are so unjustified as to constitute cruel and unusual punishment.

## B. Ohio Law

{¶ 31} The Ohio Constitution, Article I, Section 9, contains its own prohibition against cruel and unusual punishment. While it contains the same language as the United States Constitution ("[e]xcessive bail shall not be required,

nor excessive fines imposed; nor cruel and unusual punishments inflicted"), it provides unique protection for Ohioans:

> The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups.

*Arnold v. Cleveland,* 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. Thus, Article I, Section 9 of the Ohio Constitution provides protection independent of the protection provided by the Eighth Amendment.

{¶ 32} We have recognized that cases involving cruel and unusual punishments are rare, "limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person." *McDougle v. Maxwell,* 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964). As with the Eighth Amendment, lack of proportionality is a key factor: "A punishment does not violate the constitutional prohibition against cruel and unusual punishments, if it be not so greatly disproportionate to the offense as to shock the sense of justice of the community." *State v. Chaffin,* 30 Ohio St.2d 13, 282 N.E.2d 46 (1972), paragraph three of the syllabus.

{¶ 33} Our review is focused on the portion of Blankenship's sentence that imposes an obligation on him to comply with the registration and address-verification requirements for Tier II sex offenders. We have established that the

enhanced sex-offender reporting and notification requirements enacted by S.B. 10 are punitive in nature, *Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16, and violate the Eighth Amendment when applied to certain juveniles, *In re C.P.,* 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. But we have not considered whether the punishment is cruel and unusual when applied to adults.

{¶ 34} Blankenship cites *In re C.P.*, in which we were asked to address whether lifetime registration for a new class of juvenile sex-offender registrants constituted cruel and unusual punishment under the federal and state Constitutions. We examined each separately, and in holding that R.C. 2152.86 violated the Ohio Constitution, we stated,

> S.B. 10 forces registration and notification requirements into a juvenile system where rehabilitation is paramount, confidentiality is elemental, and individualized treatment from judges is essential. The public punishments required by R.C. 2152.86 are automatic, lifelong, and contrary to the rehabilitative goals of the juvenile system. We conclude that they "shock the sense of justice of the community" and thus violate Ohio's prohibition against cruel and unusual punishments.

While *In re C.P.* was pending, the First District Court of Appeals determined that the Tier II registration requirements associated with a conviction for unlawful sexual conduct with a minor did not amount to cruel and unusual punishment. *State v. Bradley,* 1st Dist. Hamilton No. C-100833, 2011-Ohio-6266. As a point of comparison, the First District relied upon *State v. Hairston,* 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, a case in which we upheld a prison

sentence of 134 years against a claim of cruel and unusual punishment. After examining the facts in its own case, the First District concluded,

> We cannot say that the requirement that Bradley register as a sexual offender for 25 years and verify his information every 180 days constitutes one of those rare cases where the punishment is so extreme as to be grossly disproportionate to the crime or that it is shocking to a reasonable person and to the community's sense of justice.

*Id.* at ¶ 13.

{¶ 35} In similar fashion, Blankenship has not overcome the hurdle of showing that his punishment is cruel or unusual. The concerns that led us to conclude that the requirement of lifetime registration for certain juvenile offenders violated Ohio's prohibition against cruel and unusual punishment in *In re C.P.* are largely absent when dealing with an adult who engaged in unlawful sexual conduct with a minor.

{¶ 36} We are also mindful that "reviewing courts should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes." *Weitbrecht* at 373. The General Assembly has seen fit to impose registration sanctions in cases involving sex offenses to protect the public. Indeed, such sanctions now are the norm. *People v. Temelkoski,* 307 Mich.App. 241, 262, 859 N.W.2d 742 (2014) ("all 50 states and the federal government have enacted some form of sex offender registration and notification provisions"). They cannot be said to be shocking to the sense of justice of the community.

{¶ 37} The stated legislative intent of the General Assembly in enacting S.B.10 is to protect the public. While some may question whether the registration

14

requirements are the best way to further public safety,[2] questions concerning the wisdom of legislation are for the legislature. " '[W]hether the court agrees with it in that particular or not is of no consequence. * * * If the legislature has the constitutional power to enact a law, no matter whether the law be wise or otherwise it is no concern of the court.' " (Ellipsis sic.) *Butler v. Jordan,* 92 Ohio St.3d 354, 376, 750 N.E.2d 554 (2001), quoting *State Bd. of Health v. Greenville,* 86 Ohio St. 1, 20, 98 N.E. 1019 (1912). It is undisputed that the General Assembly is " 'the ultimate arbiter of public policy' " and the only branch of government charged with fulfilling that role. *Arbino v. Johnson & Johnson,* 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis,* 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. Blankenship has not met his burden to show that Tier II sex-offender registration requirements are cruel and unusual punishment.

### III. Conclusion

{¶ 38} We hold that the registration and address-verification requirements for Tier II offenders under R.C. Chapter 2950 do not constitute cruel and unusual punishment in violation of either the Eighth Amendment to the United States Constitution or Article I, Section 9 of the Ohio Constitution. The Tier II registration requirements do not meet the high burden of being so extreme as to be grossly disproportionate to the crime or shocking to a reasonable person. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, J., concur.

O'DONNELL and KENNEDY, JJ., concur in judgment only.

PFEIFER and O'NEILL, JJ., dissent.

---

[2] *See, e.g.,* Miller, *Let the Burden Fit the Crime: Extending Proportionality Review to Sex Offenders,* 123 Yale L.J. 1607 (2014).

_____

**O'DONNELL, J., concurring in judgment only.**

{¶ 39} I concur with the majority's judgment to affirm the court of appeals, because there is no merit to Travis Blankenship's claim that his classification as a Tier II sex offender subjects him to cruel and unusual punishment. It clearly does not.

{¶ 40} In my view, the Eighth Amendment does not apply to this case, because I believe that sex offender registration in Ohio is a civil, nonpunitive requirement. Ohio's current sex offender registration statute, 2007 Am.Sub.S.B. No. 10 ("S.B. 10"), does not substantially differ from prior versions of the statute upheld in *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998), *State v. Williams*, 88 Ohio St.3d 513, 528, 728 N.E.2d 342 (2000), *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, and *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, cases recognizing that sex offender registration is not a form of punishment.

{¶ 41} The General Assembly enacted S.B. 10 in compliance with the federal Adam Walsh Child Protection and Safety Act, 42 U.S.C. 16901 et seq. To avoid losing federal funds allocated to Ohio, the legislature followed a federal mandate to designate offenders and classify them as Tier I, II, or III sex offenders based on the offense of conviction and to require them to register for the durations and frequencies specified by federal law.

{¶ 42} In direct conflict with this court's recent decisions in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, and *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, every federal circuit court to consider the issue has recognized that the federal sex offender registration scheme which Ohio adopted does not impose additional criminal punishment on sex offenders. In fact, in its most recent pronouncement, the United States

Supreme Court described the federal sex offender registration law as establishing "[a] civil registration requirement" that "is eminently reasonable." *United States v. Kebodeaux*, ___ U.S. ___, 133 S.Ct. 2496, 2503, 186 L.Ed.2d 540 (2013).

{¶ 43} Until the decisions in *Williams* and *C.P.*, Ohio recognized registration as a civil requirement, not punitive or criminal in nature. Instead of diametrically changing Ohio law, we should follow our precedent and established federal law and hold that classifying Blankenship as a Tier II sex offender does not punish him for an offense and therefore cannot violate the United States Constitution's prohibition against cruel and unusual punishment.

**Ohio History of Sex Offender Registration**

{¶ 44} A review of the prior sex offender registration statutes, 1996 Am.Sub.H.B. No. 180 ("H.B. 180"), 146 Ohio Laws, Part II, 2560, subsequently amended by 2003 Am.Sub.S.B. No. 5 ("S.B. 5"), 150 Ohio Laws, Part IV, 6558, and our decisions interpreting them sheds light on whether S.B. 10 imposes punishment on sex offenders.

*Megan's Law*

{¶ 45} In 1996, the General Assembly enacted H.B. 180, better known as "Megan's Law." That act revised R.C. Chapter 2950 and established a comprehensive system of sex-offender classification and registration, which applied regardless of when the underlying sex offense had been committed. Former R.C. 2950.04(A), 146 Ohio Laws, Part II, at 2609-2610. The act also provided criminal penalties for failing to comply with its registration requirements. Former R.C. 2950.99, *id*. at 2634-2635.

{¶ 46} Megan's Law divided sex offenders into three categories: sexually oriented offenders, habitual sex offenders, and sexual predators. Former R.C. R.C. 2950.09, *id*. at 2618. It provided in former R.C. 2950.06(B)(2) and 2950.07(B)(3), *id*. at 2613 and 2617, that anyone convicted of a sexually oriented

offense would be subject to annual reporting requirements for a period of ten years.

{¶ 47} Having convicted an offender of a sexually oriented offense, if a judge determined that the offender had a previous conviction for a sexually oriented offense, then former R.C. 2950.09(E), 146 Ohio Laws, Part II, at 2623-2624, required the court to adjudicate the offender a habitual sex offender, thereby subjecting the offender to annual reporting for 20 years pursuant to former R.C. 2950.06(B)(2) and 2950.07(B)(2), *id*. at 2613, 2617.

{¶ 48} The General Assembly reserved the most stringent reporting requirements for offenders who had been adjudicated by a court to be a sexual predator. Megan's Law required sexual predators to report every 90 days for life, former R.C. 2950.06(B)(1) and 2950.07(B)(2), 146 Ohio Laws, Part II, at 2613, 2616-2617, unless the court removed that classification pursuant to former R.C. 2950.09(D), 146 Ohio Laws, Part II, at 2621-2623.

{¶ 49} Megan's Law required all sex offenders to register with the sheriff in the county in which they resided or were temporarily domiciled for more than seven days. Former R.C. 2950.04(A), *id*. at 2609. It required sex offenders to provide a current residence address, the name and address of any employer, any other information required by the Bureau of Criminal Identification and Investigation, and a photograph. Former R.C. 2950.04(C), *id*. at 2610. Additionally, the law required sexual predators to provide the license plate number of each motor vehicle owned by the offender or registered in the offender's name. *Id.*

*Challenges to Megan's Law*

{¶ 50} We considered several challenges to the constitutionality of Megan's Law, and each time our analysis focused on whether the requirements the law enacted were punitive or civil in nature.

{¶ 51} In *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570, we considered the constitutionality of Megan's Law as applied to offenders who committed sexually oriented offenses before the effective date of the statute. We held that the law did not violate Article II, Section 28 of the Ohio Constitution, the Retroactivity Clause, because the registration requirements provided in the act were necessary to achieve the legislature's remedial purpose of protecting the public from sexual offenders. *Id.* at 412-413. Although we recognized that Megan's Law increased the frequency and duration of reporting beyond that required by prior law, *id.* at 411, we determined that these provisions only "us[ed] past events to establish current status" and constituted "*de minimis* procedural requirements" necessary to achieve the purpose of the act, *id*. at 412.

{¶ 52} Additionally, in *Cook*, we rejected an ex post facto challenge to Megan's Law, explaining that the statute did not contain any language expressing an intent to punish sex offenders for prior conduct, *id*. at 417, nor could it be considered to be punitive in practical effect, *id*. at 423. Rather, the statutory scheme furthered the stated legislative purpose of protecting the public from sexual offenders. *Id*. While weighing the seven nonexhaustive guideposts set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963),[3] for deciding whether a statute is punitive for purposes of federal law, we determined that the act did not impose a new affirmative disability or further

---

[3] These guideposts include

> "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned * * * ."

(Footnotes omitted, brackets and ellipsis sic.) *Cook*, 83 Ohio St.3d at 418, 700 N.E.2d 570, quoting *Mendoza-Martinez*, 372 U.S. at 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644.

the traditional aims of punishment, but imposed an inconvenience comparable to the renewal of a driver's license. *Cook* at 418, 420. Because we concluded that the registration requirements were not punitive, but remedial, in nature, we held that the retrospective application of Megan's Law did not violate the Ex Post Facto Clause of the United States Constitution. *Id*. at 423.

{¶ 53} Again, in *State v. Williams*, 88 Ohio St.3d at 528, 728 N.E.2d 342, relying on *Cook*, we held that because Megan's Law did not impose punishment, it necessarily did not violate the Double Jeopardy Clauses of the Constitutions of the United States and the state of Ohio.

{¶ 54} And in *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, we considered whether Megan's Law violated an offender's right to procedural due process by imposing a sex offender classification and registration requirement without a judicial hearing. Adhering to our holdings in *Cook* and *Williams*, we determined that an offender suffers neither bodily restraint nor other punishment as a result of the de minimis registration requirements imposed by Megan's Law, and therefore due process did not require a court to conduct a hearing before finding a defendant to be a sexually oriented offender. *Id.* at ¶ 14-15, 18.

*S.B. 5*

{¶ 55} In 2003, the General Assembly enacted S.B. 5, amending Megan's Law to provide, inter alia, that regardless of when a sexually oriented offense occurred, sex offenders had to personally register with the sheriff of the county in which they (a) resided or were temporarily domiciled for more than five days, (b) attended school, and/or (c) worked for more than 14 days or for an aggregate of 30 days or more in a calendar year. Former R.C. 2950.04(A)(1), 150 Ohio Laws, Part IV, at 6657-6658. The act imposed a duty upon sex offenders to report not only their home address but also the address of their school and place of employment. Former R.C. 2950.06(A), *id*. at 6673. Adult offenders classified as

sexual predators could no longer petition to remove the designation. Former R.C. 2950.07(B)(3) and 2950.09(D)(1), *id*. at 6683, 6696. Additionally, the act provided that any information provided by sex offenders to the county sheriff was available for public inspection, and it directed the attorney general to establish an Internet database providing this information to the public. Former R.C. 2950.081, 2950.13(A)(11), *id*. at 6686, 6728-6729.

*Challenges to S.B. 5*

{¶ 56} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, we considered whether Megan's Law remained a civil, regulatory scheme following its amendment by S.B. 5. The issue in *Wilson* concerned whether an appellate court should apply a civil or criminal standard of review to a trial court decision not to classify an offender as a sexual predator. Following *Cook* and *Williams*, we held that sex-offender-classification proceedings were civil in nature, not criminal. *Id*. at ¶ 32. We concluded that courts reviewing the outcome of sexual-predator-classification hearings should apply the civil manifest-weight-of-the-evidence standard and affirm a trial court judgment if it was supported by some competent, credible evidence. *Wilson* at ¶ 32.

{¶ 57} In *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, we addressed retroactivity and ex post facto challenges to R.C. Chapter 2950, as amended by S.B. 5. Although we recognized that the law "may pose significant and often harsh consequences for offenders," we explained that the amendments enacted by S.B. 5 had not "transmogrified the remedial statute into a punitive one." *Id.* at ¶ 32. Further, we acknowledged the General Assembly's "clear reaffirmation of an intent to protect the public from sex offenders" and concluded that "the more burdensome registration requirements * * * were not born of a desire to punish." *Id.* at ¶ 35-36. Recognizing that " 'consequences as drastic as deportation, deprivation of one's livelihood, and termination of financial support have not been considered sufficient to transform

an avowedly regulatory measure into a punitive one,' " we determined that the additional burdens imposed by S.B. 5 did not amount to punishment. *Id.* at ¶ 39, quoting *Doe v. Pataki,* 120 F.3d 1263, 1279 (2d Cir.1997). Accordingly, we held that the amendments enacted by S.B. 5 did not violate the Retroactivity Clause of the Ohio Constitution. *Id.* at ¶ 40. Furthermore, based on our conclusion that R.C. Chapter 2950 established a civil, remedial regulatory scheme, we rejected Ferguson's related ex post facto challenge. *Id.* at ¶ 43.

### The Adam Walsh Act and SORNA

{¶ 58} On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act ("Adam Walsh Act") with the expressed intent "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Title of the Adam Walsh Child Protection and Safety Act, Pub.L. No. 109-248, 120 Stat. 587. This legislation established the Sex Offender Registration and Notification Act ("SORNA") with the purpose of creating uniform national classification and reporting standards to protect the public from sex offenders and child-victim-oriented offenders. 42 U.S.C. 16901 et seq.

{¶ 59} Congress designed SORNA "to make more uniform what had remained 'a patchwork of federal and 50 individual state registration systems,' " *United States v. Kebodeaux*, ___ U.S. ___, 133 S.Ct. at 2505, 186 L.Ed.2d 540, quoting *Reynolds v. United States,* 565 U.S. ___, 132 S.Ct. 975, 978, 181 L.Ed.2d 935 (2012), in order to eliminate " 'loopholes and deficiencies' that had resulted in an estimated 100,000 sex offenders becoming 'missing' or 'lost,' " *id.*, quoting H.Rep. No. 109-218(I), at 20, 26 (2005). *See* S.Rep. No. 109–369, at 16–17 (2006). Congress encouraged the states to adopt uniform sex offender registration laws, 42 U.S.C. 16912, or risk losing federal funds otherwise allocated to them, 42 U.S.C. 16925.

{¶ 60} SORNA requires sex offenders to be classified within three tiers based solely on the offense of conviction. 42 U.S.C. 16911. Tier I sex offenders must register annually for 15 years, Tier II sex offenders must register every six months for 25 years, and Tier III sex offenders must register every three months for life. 42 U.S.C. 16915(a); 42 U.S.C. 16916. SORNA also requires sex offenders to update their registration within three business days of changing a residence, employment, or student status, and to provide personal information such as home, work, and school addresses, descriptions of vehicles, a current photograph, and a set of finger and palm prints and a DNA sample. 42 U.S.C. 16913; 42 U.S.C. 16914. These requirements apply to federal sex offenses and include offenders who had already completed their sentences. 42 U.S.C. 16913, 42 U.S.C. 16913(d); 28 C.F.R. 72.3. And Congress made it a federal offense punishable by up to ten years in prison to knowingly fail to register as required by SORNA. 18 U.S.C. 2250.

{¶ 61} The United States Supreme Court has explained that these provisions "reflect Congress' determination that the statute, changed in respect to frequency, penalties, and other details, will keep track of more offenders and will encourage States themselves to adopt its uniform standards." *Kebodeaux*, ___ U.S. ___, 133 S.Ct. at 2505, 186 L.Ed.2d 540. Characterizing SORNA as providing a "civil registration requirement," the court stated that "Congress could reasonably conclude that registration requirements applied to federal sex offenders after their release can help protect the public from those federal sex offenders and alleviate public safety concerns." *Id.* at 2503. It further indicated that "sex offender registration has 'a legitimate nonpunitive purpose of "public safety, which is advanced by alerting the public to the risk of sex offenders in their community." ' " *Id.*, quoting *Smith v. Doe*, 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), quoting *Doe I v. Otte*, 259 F.3d 979, 991 (9th Cir.2001).

*Challenges to SORNA*

**{¶ 62}** Challenges to the constitutionality of SORNA have been consistently rejected, and every federal circuit court to consider the issue has held that SORNA's sex offender registration requirements are not punishment. *See United States v. Parks*, 698 F.3d 1, 5-7 (1st Cir.2012); *United States v. Guzman*, 591 F.3d 83, 94 (2d Cir.2010); *United States v. Shenandoah*, 595 F.3d 151, 159 (3d Cir.2010), *abrogated on other grounds, Reynolds*, 565 U.S. ___, 132 S.Ct. 975, 181 L.Ed.2d 935; *United States v. Under Seal*, 709 F.3d 257, 266 (4th Cir.2013); *United States v. Young*, 585 F.3d 199, 204-205 (5th Cir.2009); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir.2012); *United States v. Leach*, 639 F.3d 769, 773 (7th Cir.2011); *United States v. May,* 535 F.3d 912, 919-920 (8th Cir.2008), *abrogated on other grounds*, *Reynold*s; *United States v. Shoulder*, 738 F.3d 948, 953 (9th Cir.2013); *United States v. Lawrance*, 548 F.3d 1329, 1333-1334 (10th Cir.2008); *United States v. W.B.H.*, 664 F.3d 848, 859-860 (11th Cir.2011); *see also Anderson v. Holder*, 647 F.3d 1165, 1169 (D.C.Cir.2011) (concluding that the District of Columbia's Sex Offender Registration Act is civil and nonpunitive).

**S.B. 10**

**{¶ 63}** This understanding that SORNA imposes only a civil registration requirement is an essential part of the analysis here, because the Ohio General Assembly enacted S.B. 10 in support of Congress's effort to adopt a national, uniform system of sex offender registration and notification and in response to the federal mandate to comply with SORNA or risk losing federal funds allocated to Ohio.

**{¶ 64}** The General Assembly established a civil, remedial system designed to "protect the safety and general welfare of the people of this state" and to "assur[e] public protection," R.C. 2950.02(B), in light of its determination that "[s]ex offenders and child-victim offenders pose a risk of engaging in further

sexually abusive behavior even after being released from * * * confinement," R.C. 2950.02(A)(2). From the General Assembly's decision to adopt the Congressional SORNA, which by definition is civil in nature, and its legislative finding that sex-offender-registration laws are necessary to protect the public because sex offenders pose a present danger—not because additional punishment should be inflicted on them—we can infer its intent to establish sex offender registration as a civil, remedial system.

{¶ 65} In accordance with SORNA, S.B. 10 replaced Ohio's prior sex offender classification scheme with a three-tiered system classifying offenders based on the offense of conviction: an adult Tier I offender is required to register every year for 15 years; an adult Tier II offender is required to register every 180 days for 25 years; and a Tier III offender is required to register every 90 days for life. R.C. 2950.01(E) through (G), 2950.06(B), and 2950.07(B). S.B. 10 also requires offenders to personally register with the sheriff of the county or counties in which they reside, attend school, and work, R.C. 2950.04(A)(2) and 2950.041(A)(2), and the offender must give at least 20 days' advance notice of a change of residence or school address and provide notice of a change of employment address, vehicle information, e-mail address, Internet identifier, or telephone number within three days of the change, R.C. 2950.05(A) and (D).

{¶ 66} The S.B. 10 provisions do not significantly depart from the civil, remedial registration requirements we have previously upheld, and they are equivalent to the regulations adopted by Congress and held by federal circuit courts to be nonpunitive in nature.

{¶ 67} In contrast to a plethora of established case authority, this court concluded in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, that the amendments enacted by S.B. 10 rendered R.C. Chapter 2950 punitive. *Id.* at ¶ 16. The court noted that sex offender registration is based solely on the offense of conviction, without regard to an offender's future

dangerousness; that the offender is required to register in person in the county of residence, the county of employments, and the county of school or college attendance; and that the duration of the registration requirements had been extended. *Id.* at ¶ 20. And the court stated, "No one change compels our conclusion that S.B. 10 is punitive. It is a matter of degree * * *." *Id.* at ¶ 21. And relying on the assumption that sex offender registration is now punishment, the court in *In re C.P.,* 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 58, held that the Eighth Amendment forbids the automatic imposition of lifetime sex offender registration and notification requirements on juveniles.

{¶ 68} But none of the changes identified by *Williams* rendered sex offender registration in Ohio punitive in intent or effect. The purpose of classifying offenders into tiers based on the nature of the conviction is not to impose punishment for that conviction; rather, it is intended to facilitate a national system of sex offender registration that simplifies the process of classification based solely on the offense committed either in this state or another jurisdiction for the purpose of protecting the public from the risk of recidivism.

{¶ 69} Further, linking the duty to register to a conviction for a sex offense without first requiring an individual assessment of dangerousness or risk of recidivism does not make registration punitive. The United States Supreme Court, in analyzing whether Alaska's sex offender registration statute imposed punishment on sex offenders, indicated that "[t]he State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment * * *." *Smith*, 538 U.S. at 104, 123 S.Ct. 1140, 155 L.Ed.2d 164. The court further noted,

> Alaska could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism. The legislature's findings are consistent with grave concerns over the high rate of

recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high." *McKune v. Lile,* 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) * * *.

*Smith* at 103. Thus, the court concluded, a state is permitted to make "reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id*.

**{¶ 70}** Nor does the duration of the registration requirements render them punishment. The Supreme Court rejected this argument in *Smith*, explaining that "[t]he duration of the [Alaska] reporting requirements is not excessive. Empirical research on child molesters, for instance, has shown that, '[c]ontrary to conventional wisdom, most reoffenses do not occur within the first several years after release,' but may occur 'as late as 20 years following release.' " *Id.* at 104, quoting R. Prentky, R. Knight & A. Lee, *Child Sexual Molestation: Research Issues*, National Institute of Justice Research Report, 14 (1997). Thus, the duration of registration duties in Ohio corresponds to a continuing risk sex offenders pose to the public.

**{¶ 71}** Lastly, in-person registration is not a form of punishment. In *Cook*, 83 Ohio St.3d at 418, 700 N.E.2d 570, we explained that "[r]egistering may cause some inconvenience for offenders. However, the inconvenience is comparable to renewing a driver's license. Thus, we find that the inconvenience of registration is a *de minimis* administrative requirement." And the Supreme Court in *Smith* rejected the notion that registration is akin to probation or supervised release. *Smith*, 538 U.S. at 101, 123 S.Ct. 1140, 155 L.Ed.2d 164.

**{¶ 72}** The reasons advanced in *Williams* for deciding that S.B. 10 is punishment do not withstand scrutiny. Sex offender registration is not punishment, and therefore we need not decide whether classifying Blankenship as

a Tier II sex offender with a duty to report every 180 days for 25 years is proportionate to his offense of having consensual sex with a minor. Questions regarding whether this registration duty is necessary and appropriate in these circumstances do not involve the Eighth Amendment, but rather, these are matters of policy that are the province of the General Assembly, the arbiter of public policy in Ohio.

## Conclusion

{¶ 73} There are no significant differences between Megan's Law, which this court characterized as a civil, remedial enactment designed to protect the welfare and safety of the public, and S.B. 10, which the legislature enacted to conform with the registration and notification requirements established by federal law. In accordance with our prior precedent and in agreement with the federal circuit courts, I would overrule our decisions in *Williams* and *C.P.* and hold that sex offender registration is not punishment for an offense. Accordingly, I concur in the judgment to affirm the court of appeals based on this analysis.

KENNEDY, J., concurs in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 74} The framework within which an issue is presented can unduly influence the outcome. For example, if you ask a stadium full of people whether requiring a Tier II sex offender to comply with certain reporting requirements shocks their sense of justice, you are unlikely to receive a single affirmative response. But, as more information is provided, the likely response can be expected to change.

{¶ 75} Assume the same question but add that the offender was an adult male who had sex with a 15-year-old girl. Requiring registration and address verification will still seem reasonable, unlikely to shock a community's sense of

justice. Even so, some might ask about the age of the offender and the specifics of the reporting requirements.

{¶ 76} Assume the same question as above but add that the offender was a 21-year-old male, that the 15-year-old girl consented, and that the registration and address-verification requirements must be complied with every six months for 25 years, and now we are at the threshold. Many will see the consent as a mitigating factor, many will see the relatively modest age difference as a mitigating factor, and many will see the 25-year time period as unnecessarily long. As the majority notes, and I acknowledge, these potentially mitigating factors are not statutorily relevant, but they are nevertheless constitutionally relevant.

{¶ 77} Assume further that the offender has been determined by a psychologist to have none of the characteristics of a sex offender and to have a low risk of reoffending. There would be many who would be shocked at the severity and length of the punishment, i.e., the reporting requirements.

{¶ 78} Assume all of the above and add that the offender could have received a sentence of up to 18 months, *see* R.C. 2929.14(A)(4), that he was sentenced to six months in prison (the shortest term possible), and that a judge released him after he had served a mere 12 days. Now the community's sense of justice has been violated. Few would deem it appropriate to require a person who committed a crime that warranted a 12-day sentence to comply with reporting requirements every six months for the next 25 years.

{¶ 79} The touchstone of federal cruel-and-unusual-punishment analysis is that the punishment must be proportional to the crime. *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910). The case before us fails this standard. The current statutory scheme does not allow discretion on the part of the sentencing judge. Instead, all similarly situated offenders (meaning those with a similar age differential and no prior record as a sex offender) are punished according to a one-size-fits-all standard. There is no proportionality. The

sentencing judge has discretion as to imposing a prison term, but not as to the registration and address-verification requirements. Offenders warranting a 12-day sentence have the same reporting requirements as those warranting an 18-month sentence. Offenders considered at low risk of reoffending have the same reporting requirements as those considered at high risk of reoffending. This lack of proportionality is constitutionally flawed.

{¶ 80} Ohio's constitutional standard is somewhat different: a punishment is cruel and unusual when it "would be considered shocking to any reasonable person." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964). It is clear to me that reasonable people would consider it shocking to require a person whose crime warranted a 12-day sentence to submit to twice-a-year reporting requirements for a 25-year period.

{¶ 81} This court has determined that the registration and address-verification requirements for Tier II sex offenders are punitive. *State v. Williams*, 129 Ohio St.3d 3474, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16. Today we should declare that in certain circumstances, the 25-year reporting requirements are onerous enough to constitute cruel and unusual punishment. I do not believe that the registration and address-verification requirements at issue in this case are cruel and unusual with respect to all Tier II sex offenders. But as applied to Blankenship, who was deemed to warrant a prison sentence of only 12 days, who has a low risk of reoffending, and who possesses none of the characteristics of a sex offender, the requirement to register and verify his address every six months for the next 25 years "would be considered shocking to any reasonable person." *McDougle* at 70.

{¶ 82} I would reverse the judgment of the court of appeals. I dissent.

O'NEILL, J., concurs in the foregoing opinion.

––––––––––––––––––

**O'NEILL, J., dissenting.**

{¶ 83} Respectfully, I dissent. This case presents yet another example of the one-size-fits-all mentality that increasingly dictates criminal sentencing in Ohio. Judicial discretion has again been pushed aside.

{¶ 84} A well-qualified psychologist provided the only evidence in this case that remotely touches on the question of this defendant's threat to society. He stated unequivocally that the risk of reoffending was low. Yet, this 21-year-old offender will pay for his youthful indiscretion for a quarter of a century. Until he is 46 years old, Blankenship will be required to contact the sheriff in his home town every six months. If he moves, he must alert the authorities in his new town that a convicted sex criminal has moved into Pleasantville. R.C. 2950.05(A). That information will be available to the public on the Internet. R.C. 2950.081(A). In this age of instant Internet chat rooms, imagine the future for his children when the mother's network alerts all the grade-school children to avoid anyone who lives at 123 Elm Street. These requirements fall directly within the definition of the phrase "cruel and unusual."

{¶ 85} I believe that imposing the Tier II sex-offender/child-victim-offender classification and its attendant registration requirements upon this defendant is a punishment grossly disproportionate to his crime. The trial court followed the law as it is written, and that is the problem. When sex offenders present a real threat to the public, the law indeed deters further crime, punishes the offender, and provides information the public can use to protect itself from offenders of the worst sort. In those cases, when there is a classic sex offender, the registration process that started with Megan's Law and continued in the Adam Walsh Act is not grossly disproportionate to the crime. However, this is not one of those cases. And yet this trial court was required to impose the penalty as prescribed. No discretion needed or permitted here.

**{¶ 86}** Blankenship has never been convicted of a prior felony or a crime of violence. A psychologist considered the facts of the crime, met with Blankenship multiple times, determined that Blankenship's diagnostic tests indicated a low potential for reoffending, and he exhibited no psychopathology or sociopathy. The doctor further opined that Blankenship's conduct was not evidence of pedophilia or hebephilia. Rather, Blankenship exhibited genuine emotions toward the juvenile. The psychologist reported to the trial court that treatment specific to sex offenders is unethical for a man like Blankenship with no disorder to treat. The doctor did recommend psychotherapy to help Blankenship to cope with and move on from the loss of the relationship with the minor female, to educate him about appropriate healthy relationships, and to address cognitive distortions he used to rationalize his conduct. Blankenship consistently expressed remorse.

**{¶ 87}** For offenders like Blankenship, these registration requirements guarantee an unnecessarily long term of public humiliation only. And they effectively destroy any hope of leading a successful and productive life from that point forward. This mandatory registration requirement will limit Blankenship's employability for most jobs, will prevent him from engaging in any meaningful, productive relationship with the community around him, and will essentially label him as a pariah. He will have to lay his shame at the feet of everyone he encounters: employers, neighbors, love interests, friends, co-workers, and others. And for what? The public gains little of value to offset the unusual punishment because it is perfectly clear from this record that Blankenship was psychologically capable of learning his lesson the first time. And the record in this matter reflects that he has learned right from wrong. In that sense, the harsh punishment of sharing his personal information with the world for 25 years is grossly disproportionate to the crime. The mandatory registration requirement applied

here, even though consistent with mandatory Ohio law, is constitutionally prohibited as it imposes a cruel and unusual punishment.

PFEIFER, J. concurs in the foregoing opinion.

_____

D. Andrew Wilson, Clark County Prosecuting Attorney, and Ryan A. Saunders, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Katherine R. Ross-Kinzie, Assistant Public Defender, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Chief Counsel, Appellate Division, urging affirmance for amicus curiae Franklin County Prosecuting Attorney.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Paula E. Adams, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

_____